**The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,**

v.

**Wayne STEPHENS, Defendant–Appellant and Cross–Appellee.**

**No. 90CA1641.**

Colorado Court of Appeals, Div. V.

Feb. 27, 1992.

As Modified on Denial of Rehearing April 2, 1992.

Certiorari Granted Sept. 21, 1992.

Cross-Petition for Certiorari Denied (People) Sept. 21, 1992.

John Suthers, Dist. Atty., Gordon R. Denison, Deputy Dist. Atty., Colorado Springs, Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver; for plaintiff-appellee and cross-appellant.

David F. Vela, State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant and cross-appellee.

Opinion by Judge DAVIDSON.

Defendant, Wayne Stephens, appeals from the judgment of conviction entered on a jury verdict finding him guilty of aggra-

vated motor vehicle theft in the first degree and of two counts of being an habitual criminal. By cross-appeal, the People seek disapproval of two trial court rulings. We agree with the People in part and otherwise affirm.

Defendant's aggravated motor vehicle theft charge was based on incidents occurring on September 15 and 16, 1989, in which he borrowed his employer's car and then failed to return it. He was arrested one month later with the vehicle still in his possession. Three habitual criminal counts were added, one of which the trial court dismissed because it found that the conviction on which it was based was constitutionally infirm. After a jury trial, defendant was convicted of the substantive charge and the two remaining habitual criminal counts.

## I.

In order to establish the crime of aggravated motor vehicle theft, it is necessary to prove, *inter alia*, that the defendant exercised control over the vehicle without authorization. Section 18-4-409, C.R.S. (1991 Cum.Supp.). Defendant contends that the evidence was insufficient to establish that his control was unauthorized. We disagree.

■ The standard for determination of sufficiency of evidence is whether the evidence, taken as a whole, and viewed in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the prosecution has proved each and every element of the charge beyond a reasonable doubt. The same test applies whether the evidence is direct or circumstantial. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

■ Here, the employer testified that although he originally gave defendant permission to use the car for a few hours on September 15, 1989, and subsequently extended that permission until early the following morning, he did not authorize defendant to keep it after that time.

Viewing this evidence in the light most favorable to the prosecution, we have little difficulty concluding that it is sufficient evidence to prove beyond a reasonable doubt that defendant was without authorization to keep the car after September 16, 1989.

## II.

The next two contentions of error pertain to the elemental instruction for first degree aggravated motor vehicle theft. This instruction provides:

The elements of the crime of aggravated motor vehicle theft in the first degree are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. obtained or exercised control over a motor vehicle,

5. belonging to another person,

6. without authorization, and

7. the value of the motor vehicle involved is ten thousand dollars or less, and

8. the defendant, retained possession or control of the motor vehicle for more than twenty-four hours.

## A.

■ The date charged in element two of the instruction refers to September 16, 1989. Element eight, that the defendant retained possession or control of the motor vehicle for more than 24 hours, is the aggravating factor which elevates the offense from a misdemeanor to a felony. Defendant argues that on September 16 he had not yet retained unauthorized possession of the car over 24 hours and, thus, had not committed the first degree offense. He contends, therefore, that the trial court erred by giving this instruction. We disagree.

First, by a plain reading of this instruction, the offense need only occur "at or about" September 16. This, in our view, encompasses September 17, the date on which defendant had committed all elements of the crime.

Second, the specific date is not material so long as the defense is not impaired. *People v. Thimmes,* 643 P.2d 780 (Colo. App.1981); *see Marn v. People,* 175 Colo. 242, 486 P.2d 424 (1971) (a variance between the specific date as alleged in the information and the date proved at trial is not fatal).

Here, defendant does not argue that his defense was impaired, nor does he dispute that he kept the car over 24 hours. Thus, we conclude that the one day variance is not material. *See* material. *See People v. Adler,* 629 P.2d 569 (Colo.1981) (eight day variance was not material).

### B.

■ The crux of the defense at trial was that defendant did not realize that his employer wanted the car returned to him the following morning. Although he did not object to any of the instructions given, or request any additional ones, defendant now argues that because the instruction on aggravated motor vehicle theft was confusing, the trial court erred by failing to instruct the jury *sua sponte* on the affirmative defense of mistake of fact.

Because defendant did not submit or request a mistake of fact instruction, we review his argument under a plain error standard. *People v. Aalbu,* 696 P.2d 796 (Colo.1985).

Here, a mistake of fact instruction would have informed the jury that it must acquit defendant if it found that he mistakenly believed that he was authorized to keep the car. *See* § 18-1-504(1), C.R.S. (1991 Cum. Supp.) (A person is relieved of criminal liability if his mistaken belief of fact "negatives the existence of a particular mental state essential to commission of the offense."). The same result is reached, however, if the jury finds, as it did here in accordance with the instruction given on aggravated motor vehicle theft, that the defendant did not possess the car "knowingly ... without authorization." *See* M. Wesson, *Crimes & Defenses in Colorado,* 139 (1989).

Defendant argues, however, that because in the body of the instruction the

*mens rea* requirement is separated from the element "without authorization," the instruction does not make it clear that a person must know that his possession of the motor vehicle was unauthorized. On the contrary, by a plain reading of the instruction, because "knowingly" precedes and is offset from the other elements and is followed by a comma, it modifies "without authorization." *See People v. Bossert,* 722 P.2d 998 (Colo.1986) ("the *mens rea* term 'knowingly,' offset as it is from the conduct element, modifies all conduct [subsequently] described").

Moreover, the instruction is couched in statutory language and the court specifically defined the mental state of knowingly in another instruction. Thus, we are convinced that the instructions, read as a whole, were not confusing and adequately informed the jury that it must find that the defendant knew that he had the car without authorization before it could convict him of that crime. *See People v. Freeman,* 668 P.2d 1371 (Colo.1983); *People in the Interest of J.F.C.,* 660 P.2d 7 (Colo.App. 1982). Therefore, we find no error, plain or otherwise.

### III.

Finally, defendant contends that the trial court erred in denying his motion to suppress a July 1980 Michigan conviction. Specifically, defendant asserts that because the Michigan court inadequately advised him of the elements of that offense, the plea was unconstitutionally obtained and, thus, his habitual criminal conviction based on that prior conviction must be reversed. Because we conclude that the plea was not constitutionally infirm, we disagree that the trial court erred.

■ A prior conviction obtained in violation of a constitutional right of the accused cannot be used in a subsequent criminal proceeding to support guilt or to increase punishment. Due process is satisfied if the record as a whole affirmatively demonstrates that the defendant, before entering a guilty plea, understood the constitutional rights he was waiving and the critical elements of the crime to which the

plea was tendered. *Blehm v. People,* 817 P.2d 988 (Colo.1991). In particular, the record must demonstrate that the defendant understood any mental state element of the crime to which he pled guilty. *Lacy v. People,* 775 P.2d 1 (Colo.1989), *cert. denied,* 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 337 (1989).

■ Here, the transcript of the July 1980 providency hearing reveals that the prosecutor read the information aloud in court, *see People v. Gorniak,* 197 Colo. 289, 593 P.2d 349 (Colo.1979) ("unless the language of the charge is highly technical, no more full explanation of the substantive crime could be given than the charge itself"), that defendant's attorney had discussed this matter with defendant, and that the court advised him that he was charged with "breaking and entering with intent to commit a larceny a building known as the Jackson Candy and Tobacco Company." When asked if he understood the charge against him, defendant stated that he did.

The court then explained the rights being waived and the consequences of the plea and inquired as to the factual basis of the offense. During this exchange the court asked defendant why he entered the store and defendant responded, "[to] to take some cigarettes, take them and sell them."

We conclude, therefore, that the defendant understood in general the nature of the charge to which he entered a guilty plea and, in particular, that intentional conduct constituted a necessary ingredient of the offense. *See Harshfield v. People,* 697 P.2d 391 (Colo.1985).

Contrary to defendant's assertion, the trial court is not required to advise him specifically that breaking and entering was a specific intent crime or what the *mens rea* requirement was. *See Harshfield v. People, supra* (the degree of explanation which must precede the acceptance of a guilty plea is dependent on the nature and complexity of the offense alleged and no particular ritual need be followed in accepting a tendered plea of guilty).

### IV.

On cross-appeal, the People first contend that the trial court erred in permitting de-fense counsel to argue concepts of jury nullification in closing argument.

■ Appeals by the prosecution are strictly limited. The People may appeal only questions of law, § 16–12–102(1), C.R.S. (1991 Cum.Supp.), and only "to correct errors injuriously affecting" their rights. *People v. Tharp,* 746 P.2d 1337 (Colo.1987); *Miller v. Reeder,* 157 Colo. 134, 401 P.2d 604 (1965).

Here, the People request that we address the issue of jury nullification since "it may arise on retrial." However, because of the outcome of defendant's appeal, there will be no retrial. Thus, we regard this issue as moot and decline to do so.

### V.

Prior to trial, defendant filed a motion to suppress a guilty plea entered in Michigan in September 1980. The prosecution filed an objection, arguing that this collateral attack on the plea was time-barred by § 16–5–402, C.R.S. (1986 Repl.Vol. 8A). The trial court, without a hearing, held that as a matter of law the motion was not barred because prior to the filing of the habitual criminal counts in this case, defendant did not have "present need" to attack the prior conviction between 1984–1989. Specifically, it stated that "the defendant had no reason to contest the prior criminal convictions until the People made a decision to rely on those convictions for the filing of habitual criminal charges." The trial court then granted the motion on its merits.

The People appeal, contending that the trial court's threshold ruling that the motion was not barred under § 16–5–402 was error. We agree and disapprove the ruling.

Section 16–5–402, as applicable here, provides a three-year limitation period during which a defendant can collaterally attack a prior conviction. In order to "avoid constitutional infirmities," *see People v. Germany,* 674 P.2d 345 (Colo.1983), our supreme court in *People v. Fagerholm, supra,* construed § 16–5–402 to include a grace period of five years from the statute's effective date within which convictions could be chal-

lenged without regard to the statutory exceptions. Thus, under *Fagerholm*, this defendant had only until July 1, 1989, to attack his September 1980 conviction unless he could show "excusable neglect" or "justifiable excuse." *See* § 16–5–402(2)(d), C.R.S. (1986 Repl.Vol. 8A).

However, a defendant cannot bring an attack on a prior conviction unless he has "present need" to do so. *Moland v. People*, 757 P.2d 137 (Colo.1988); *People v. Bucci*, 184 Colo. 367, 520 P.2d 580 (1974) (viability of stale or delayed claims for postconviction relief must be analyzed in terms of present need rather than principles of mootness). Present need is demonstrated, for example, if a prior conviction is to be used as a factor in sentencing in a later case, or as an underlying conviction in an habitual offender charge.

Here, the trial court determined that defendant did not have present need to attack his 1980 plea until the habitual offender charges were filed in October 1989. Therefore, the trial court reasoned that defendant was precluded by the lack of present need from bringing his collateral attack within the five year grace period allowed in *Fagerholm*. Accordingly, the court concluded as a matter of law that defendant had demonstrated "excusable neglect" and "justifiable excuse" for his failure to file his motion timely. We do not agree.

Contrary to the determination of the trial court, we conclude that defendant did have a present need to challenge his September 1980 conviction prior to the October 1989 filing of the habitual offender charges. This is because, by the enactment of § 16–5–402 and the announcement of *Fagerholm*, defendant was *required* to file any attack on any prior conviction (other than class 1 felonies) by July 1, 1989, or be forever barred. Indeed, the five-year grace period allowed by *Fagerholm* was specifically included to permit all prior offenders with concerns about the validity of their convictions to mount attacks within that period. Simply put, here the present need was the statute and the *Fagerholm* deadline.

In our view, the trial court's ruling renders the statute and the *Fagerholm* decision meaningless because, if defendant's present need arose only when the habitual offender charges were filed, then the three-year statutory limitation period in § 16–5–402 and the five-year grace period in *Fagerholm* to challenge a prior conviction have no purpose. According to the trial court's interpretation, a collateral attack on *any* prior conviction can be made long after the statute has run. Stated differently, under that interpretation the "justifiable excuse" or "excusable neglect" exception in § 16–5–402(2)(d) swallows the rule.

We do not address whether defendant otherwise may have had "justifiable excuse" or "excusable neglect" for his failure to attack the conviction within the necessary time frames. *See* § 16–5–402(2)(d). We emphasize that the only question we address in this cross-appeal is the trial court's determination as a matter of law that present need did not arise until the prior conviction was actually used against the defendant.

In summary, that part of the trial court's ruling is disapproved which holds that defendant had shown lack of present need as a matter of law. As to defendant's appeal, the judgment is affirmed.

PLANK and ROTHENBERG, JJ., concur.