The PEOPLE of the State of Colorado,
Petitioner/Cross–Respondent,

v.

Larry MERSHON, Respondent/Cross–
Petitioner.

No. 92SC598.

Supreme Court of Colorado,
En Banc.

April 18, 1994.

Rehearing Denied May 16, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Clement P. Engle, Sr. Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner, cross-respondent.

David F. Vela, CO State Public Defender, Frances Smylie Brown, Chief Appellate Deputy, Denver, for respondent, cross-petitioner.

Justice MULLARKEY delivered the Opinion of the Court.

In *People v. Mershon,* 844 P.2d 1240 (Colo. App.1992), the Colorado Court of Appeals affirmed the trial court's order vacating the defendant, Larry Mershon's, life sentence because it was disproportionate to his crimes in violation of the Eighth Amendment. We granted the People's petition for certiorari to review the proportionality of Mershon's life sentence under the Habitual Criminal Act,

sections 16–13–101 to –103, 8A C.R.S. (1986 & 1990 Supp.). We also granted Mershon's cross-petition for certiorari to decide whether the trial court erroneously applied section 16–5–402, 8A C.R.S. (1986), to prohibit Mershon from attacking the validity of his prior convictions. For the reasons set forth below, the judgment of the court of appeals is affirmed in part, reversed in part, and the case is remanded with directions.

## I

On five separate occasions between November 1989 and January 1990, Mershon sold heroin to an undercover narcotics agent. Each of the sales was for between two and five $30 "hits" or "doses" of heroin. After a jury trial in October 1990, Mershon was found guilty of five counts of distribution and sale of heroin, three counts of possession of heroin, and one count of conspiracy to commit distribution of heroin, in violation of sections 12–22–309(1)(b)(XI), 5A C.R.S. (1985) and 18–18–105(1)(a), 8B C.R.S. (1986). Heroin is a Schedule I controlled substance, section 12–22–309(1)(b)(XI), and each of the felonies of which Mershon was convicted is a class 3 felony. § 18–18–105(2)(a)(I).

Mershon also was convicted of five habitual criminal counts under subsection 16–13–101(2), 8A C.R.S. (1986), of the Habitual Criminal Act.[1] These convictions were predicated on the following felony convictions: possession of dangerous drugs (marihuana) with intent to dispense (1977), robbery (1977), attempted criminal mischief (1983), attempted dispensing of marihuana (1983), and theft (1987). Prior to trial, Mershon filed a motion to dismiss the habitual criminal counts because they were based on invalid pleas. However, the trial court denied this motion after determining that Mershon was time-barred from challenging the prior convictions under section 16–5–402, 8A C.R.S. (1986).

After Mershon was convicted of the habitual criminal counts, he requested a proportionality review. The trial court first sentenced Mershon to life imprisonment on October 16, 1990, as required by the habitual criminal statute. Then, on November 30, 1990, and January 18, 1991, the trial court held two hearings to determine what the scope of the proportionality hearing should be. At these hearings, the prosecutor argued that Mershon was entitled to only an "abbreviated" proportionality review consisting of a comparative analysis of twelve other Fourth Judicial District cases in which a life sentence had been imposed under the habitual criminal statute. The trial court agreed.

The proportionality review hearing was held on March 29, 1991. At the hearing, the prosecutor introduced a chart into evidence which showed, for Mershon and the twelve other habitual criminals, the nature of the substantive charges, the number of prior felonies proved, and the involvement of violence and deadly weapons in each defendant's substantive or prior offenses. The chart purported to demonstrate that every defendant who had been convicted of habitual criminal counts in the District, including Mershon, had committed crimes involving deadly weapons or violence.

On April 1, 1991, the trial court issued an order vacating Mershon's life sentence. The court found that the offenses of each of the other twelve habitual criminals involved violence or the use of a deadly weapon, whereas Mershon's offenses did not. In the court's view, sentencing Mershon to life imprisonment would treat him "more harshly than other criminals in this state who have committed more serious crimes." The court concluded that Mershon's sentence was "significantly disproportionate" to his crimes, and thus was "prohibited by the Eighth Amendment to the United States Constitution as cruel and unusual punishment." The trial court then ordered a resentencing hearing.

At the resentencing hearing, the trial court entertained a motion for reconsideration filed by the district attorney. The district attorney presented the testimony of additional witnesses in order to show that Mershon's

---

1. At the time this case arose, § 16–13–101(2) provided that "[e]very person convicted in this state of any felony, who has been three times previously convicted, ... shall be adjudged an habitual criminal and shall be punished by imprisonment in a correctional facility for the term of his or her natural life."

convictions did not involve less violence or weapons than those of the other twelve habitual criminal defendants. The district attorney also argued that the trial court erred as a matter of law in viewing drug offenses as less serious than crimes involving violence or weapons.

While the trial court agreed that Mershon's offenses were serious, it believed that they did not meet the habitual offender "common denominator" of violence or a deadly weapon. Therefore, it denied the motion to reconsider and sentenced Mershon to five consecutive seven-year sentences totalling thirty-five years. Both Mershon and the People appealed, and in *People v. Mershon,* 844 P.2d 1240 (Colo.App.1992), the court of appeals affirmed the trial court's judgment and sentence.

## II

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." [2] U.S. Const. amend. VIII. The United States Supreme Court has interpreted this final clause to prohibit not only barbaric punishments, but also the imposition of sentences that are disproportionate to the severity of the crimes committed. *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). However, the Eighth Amendment does not require strict proportionality between the crime and the sentence. *Harmelin v. Michigan,* 501 U.S. 957, ——, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). Instead, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *Id.; Solem,* 463 U.S. at 303, 103 S.Ct. at 3016; *Rummel v. Estelle,*

445 U.S. 263, 271, 100 S.Ct. 1133, 1137–38, 63 L.Ed.2d 382 (1980); *People v. Smith,* 848 P.2d 365, 374 (Colo.1993).

Outside the capital punishment context, successful challenges to the proportionality of a particular sentence are extremely rare. *Harmelin v. Michigan,* 501 U.S. at ——, 111 S.Ct. at 2705; *Solem,* 463 U.S. at 289–90, 103 S.Ct. at 3009–10; *Hutto v. Davis,* 454 U.S. 370, 374, 102 S.Ct. 703, 705–06, 70 L.Ed.2d 556 (1982); *Rummel,* 445 U.S. at 272, 100 S.Ct. at 1138. However, no sentence is *per se* constitutional. *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009–10. Thus, a defendant who challenges the constitutionality of a life sentence imposed under Colorado's habitual criminal statute is entitled to a proportionality review in order to guard against the possibility that the sentence violates the Eighth Amendment. *People v. Gaskins,* 825 P.2d 30, 34 (Colo.1992); *Alvarez v. People,* 797 P.2d 37, 40 (Colo.1990); *People v. Drake,* 785 P.2d 1257, 1275 (Colo. 1990); *People v. Hernandez,* 686 P.2d 1325, 1329 (Colo.1984).

A proportionality review measures the relationship between the nature and number of offenses committed and the severity of the punishment inflicted upon the offender. *Rummel,* 445 U.S. at 288, 100 S.Ct. at 1146–47 (Powell, J., dissenting). In performing this review, courts should be guided by objective criteria, as opposed to the subjective views of individual judges. *Hutto,* 454 U.S. at 373, 102 S.Ct. at 705; *Rummel,* 445 U.S. at 275, 100 S.Ct. at 1139–40. These objective factors include (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in

---

**2.** In his Answer Brief before this court, Mershon argues that article II, section 20, of the Colorado Constitution provides protections additional to those available under the United States Constitution with respect to the proportionality issue before us in this case. However, the trial court's order was based on the Eighth Amendment alone. Furthermore, in his briefs before the court of appeals, Mershon never argued that the state constitution should be construed to provide greater protection than the federal constitution. We therefore decline to address Mershon's state

constitutional argument, and will instead consider his challenge here to be based solely upon the Eighth Amendment. *See People v. Gann,* 724 P.2d 1318, 1320 (Colo.1986) (where defendant's motion to dismiss refers generally to "due process" and the district court fails to make any specific reference to the Colorado Constitution in its order of dismissal, this court must presume that both the motion and the lower court's ruling were based exclusively on federal constitutional standards).

other jurisdictions. *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010–11.

Relying on *Solem*, this court has held that only an "abbreviated" review is required when the crimes supporting an habitual criminal sentence include grave or serious offenses, and when the defendant will become eligible for parole, albeit not for forty years. *People v. Cisneros*, 855 P.2d 822, 827 (Colo. 1993); *Gaskins*, 825 P.2d at 36. This review "consists of a scrutiny of the offenses in question to determine whether in combination they are so lacking in gravity or seriousness as to suggest that a life sentence is constitutionally disproportionate to the crime." *Gaskins*, 825 P.2d at 36. However, when a defendant's crimes are not inherently grave or serious, then the trial court must conduct a more extensive review in which it considers additional evidence relevant to constitutional proportionality, such as the facts underlying the defendant's offenses or explicit intra- and inter-jurisdictional comparisons. *Id.* at 38.

In the past, we have recognized that "[t]he provisions of the Habitual Criminal Act create a unique possibility that a defendant will receive a life sentence which is not proportionate to the crime for which the defendant has been convicted." *Alvarez*, 797 P.2d at 40. Nevertheless, in almost all cases where a life sentence is imposed under the habitual criminal statute, only an abbreviated review will be required. *Id.* at 41. Only in the rare case will the felonies supporting a life sentence be so lacking in inherent gravity that an extended review is required. *Gaskins*, 825 P.2d at 36 n. 11; *Alvarez*, 797 P.2d at 41.

With these principles in mind, we will now consider whether the trial court erred in holding Mershon's sentence to be disproportionate in violation of the Eighth Amendment.

### A

In reviewing the proportionality of Mershon's sentence, the trial court concluded that Mershon's offenses were serious. However, it then proceeded to conduct a more extended review at the prosecutor's insistence and considered matters outside the record such as the facts underlying Mershon's offenses and the offenses of twelve other habitual criminal defendants in the District.

While the scope of this review was more extensive than necessary given the seriousness of Mershon's offenses, the review procedure employed by the trial court does not constitute reversible error. As we have previously stated, the trial court has the discretion to control the character and scope of the evidence presented concerning constitutional proportionality. *Gaskins*, 825 P.2d at 38 n. 13. This is because the trial court is in the best position to evaluate the extensiveness of the factual inquiries necessary to make an informed proportionality determination. *Id.; People v. Austin*, 799 P.2d 408, 413 (Colo.App.), *cert. denied* (Oct. 29, 1990).

### B

The People do not challenge the nature and scope of the review conducted by the trial court. Instead, they argue that the trial court employed an erroneous legal standard to evaluate the constitutionality of Mershon's sentence. They further contend that the court of appeals applied an incorrect standard of review in affirming the trial court's order with respect to the proportionality issue. We will address each of these arguments in turn.

### 1

When a trial court reviews the proportionality of a life sentence prescribed by the habitual criminal statute, the critical question is whether the defendant's crimes, when examined in combination, are lacking in gravity or seriousness. *Cisneros*, 855 P.2d at 828. If the trial court concludes that the defendant's crimes are grave or serious, then a life sentence, although severe, does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. "Extremely harsh sentences are not constitutionally disproportionate when imposed for the commission of grave offenses." *Id.* at 844 (Kirshbaum, J., specially concurring in part and dissenting in part).

In order to determine whether the offenses which form the basis of an habitual criminal sentence are grave or serious, the trial court should compare the offenses in light of the harm caused or threatened to the victim or society. *Solem,* 463 U.S. at 292, 103 S.Ct. at 3010–11; *Gaskins,* 825 P.2d at 36. In *Gaskins,* we listed a variety of considerations which are relevant in assessing the degree of harm caused or threatened by a particular offense. These factors include whether the crime involves violence, the absolute magnitude of the crime and the defendant's motive. *Gaskins,* 825 P.2d at 36–37. However, this list is not exhaustive, but merely illustrative of "generally accepted criteria for comparing the severity of different crimes on a broad scale, despite the difficulties courts face in attempting to draw distinctions between similar crimes." *Solem,* 463 U.S. at 294, 103 S.Ct. at 3011 (quoted in *Gaskins,* 825 P.2d at 37).

In this case, the trial court examined Mershon's present and prior offenses and conceded that these crimes were serious. We agree. The felonies triggering Mershon's life sentence included five counts of distribution and sale of heroin, and two of his five prior felonies were for attempted or intended dispensing of marihuana. In prior cases, this court consistently has treated drug trafficking offenses as grave and serious crimes due to the "great societal harm caused by sale of illegal drugs and the evils associated with their use." *Gaskins,* 825 P.2d at 37. *See also Cisneros,* 855 P.2d at 830 (treating the possession and sale of narcotic drugs as grave and serious offenses); *Hernandez,* 686 P.2d at 1330 (same). Courts throughout the country have reached a similar conclusion. *See, e.g., Harmelin,* 501 U.S. at ——, 111 S.Ct. at 2706 (upholding sentence of life without parole for first-time offense since crime of possessing more than 650 grams of cocaine "threatened to cause grave harm to society"); *Solem,* 463 U.S. at 299, 103 S.Ct. at 3014 (third offense of heroin dealing described as a "very serious offense"); *Young v. Miller,* 883 F.2d 1276, 1285 (6th Cir.1989) ("[H]eroin dealing in any quantity is a very serious offense."), *cert. denied,* —— U.S. ——, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991); *Terrebone v. Butler,* 848 F.2d 500 (5th Cir.1988) (upholding mandatory life sentence without parole for heroin offender convicted of delivering 22 individual doses of heroin to undercover police officers), *cert. denied,* 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989).

Nor are Mershon's prior felonies of robbery, theft, and attempted criminal mischief minor crimes. It is well-settled that "robbery" is deemed to be a serious crime for proportionality purposes. *Gaskins,* 825 P.2d at 37; *Hernandez,* 686 P.2d at 1330. This is because robbery "involves violence or potential for violence." *Gaskins,* 825 P.2d at 37. The crime of theft is of a lesser degree of gravity than crimes involving the sale of narcotic drugs. *Id.* at 39. However, theft has been treated as a serious felony for proportionality purposes when it is one of a variety of prior offenses. *See Alvarez,* 797 P.2d at 41, 42. Finally, the crime of attempted criminal mischief, on its face, is not a particularly grave or serious offense. Thus, a trial court must examine the facts and circumstances underlying the offense in order to gauge the severity of the crime. *See Gaskins,* 825 P.2d at 39. The trial court conducted a relatively detailed review in this case, and the record is sufficient for us to conclude that this offense was not insubstantial. According to a post-sentence investigation report, Mershon was seen knocking over traffic signs on October 12, 1982. He then used a sign to smash the window and body of a car, causing approximately $4400 worth of damage.[3] Under these facts, this too was a serious crime.

Having determined that Mershon's offenses were serious, the trial court should

---

**3.** Moreover, even if we were to conclude that this particular crime was not grave or serious, our assessment of the constitutionality of Mershon's sentence would not change. A defendant can receive a life sentence as an habitual criminal if he has three prior felony convictions. *See* § 16–13–101(2). Here, the jury found that Mershon had five prior convictions. His sentence would not become unconstitutionally disproportionate simply because only four of his five prior convictions involved serious offenses. The test is the gravity or seriousness of the prior felonies when considered in combination or as a whole. *Gaskins,* 825 P.2d at 36.

have concluded that the life sentence which it was required to impose under the habitual criminal statute did not violate the Eighth Amendment. Instead, the trial court determined that Mershon's sentence was unconstitutionally disproportionate because his crimes, although serious, were not violent. In the trial court's view, since twelve other habitual criminal defendants in the District had committed crimes involving violence or a deadly weapon, violence is required before an offense will be deemed sufficiently severe to warrant a sentence of life imprisonment. We disagree.

As mentioned above, violence is a relevant consideration when assessing the harm caused or threatened by an offense. *Solem,* 463 U.S. at 292–93, 103 S.Ct. at 3010–11; *Gaskins,* 825 P.2d at 36. However, violence clearly is not the sole criterion by which to evaluate the seriousness of a crime. As the United States Supreme Court explained in *Rummel:*

> [T]he presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal. A high official in a large corporation can commit undeniably serious crimes in the area of antitrust, bribery, or clean air or water standards without coming close to engaging in any "violent" or short-term "life-threatening" behavior.

445 U.S. at 275, 100 S.Ct. at 1140. *See also Harmelin,* 501 U.S. at ——, 111 S.Ct. at 2697

(Scalia, J.) ("[S]ome offenses, involving violent harm to human beings, will always and everywhere be regarded as serious, but that is only half the equation. The issue is *what else* should be regarded to be *as serious* as these offenses, or even to be *more serious* than some of them.") (emphasis in original); *Solem,* 463 U.S. at 291 n. 17, 103 S.Ct. at 3010 n. 17 ("[N]o single criterion can identify when a sentence is so grossly disproportionate that it violates the Eighth Amendment."). Thus, even if we were to agree that Mershon's offenses were nonviolent,[4] this does not mean that his crimes are not serious and cannot be punished constitutionally by a mandatory sentence of life imprisonment.

We also disagree with the trial court's conclusion that crimes of violence are inherently more serious and should be punished more severely than the crimes which Mershon committed. In *Rummel,* the Court described this idea as one which "simply will not wash, whether it be taken as a matter of morals, history, or law." 445 U.S. at 282 n. 27, 100 S.Ct. at 1143 n. 27. In addition, Colorado's criminal statutes refute the trial court's position. Mershon's heroin offenses are all class 3 felonies, punishable by a presumptive range sentence of four to sixteen years' imprisonment, with an aggravated range maximum of thirty-two years.[5] § 18–1–105(1)(a)(IV) & (9)(a), 8B C.R.S. (1986 & 1990 Supp.). Certain violent crimes, such as first degree murder,[6] carry harsher penalties than the crimes of which Mershon was convicted.[7] However, many violent crimes, such

---

4. We note that in *Harmelin,* Justice Kennedy explicitly found the notion that drug crimes are nonviolent and victimless to be "false to the point of absurdity." 501 U.S. at ——, 111 S.Ct. at 2706.

> Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.

*Id. See also Rummel,* 445 U.S. at 296 n. 12, 100 S.Ct. at 1150 n. 12 (Powell, J., dissenting) ("A professional seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault.").

5. Thus, if the trial court found aggravating circumstances, Mershon could have received five consecutive thirty-two-year sentences totalling 160 years' imprisonment even without habitual criminal sentencing.

6. First degree murder is a class 1 felony, § 18–3–102(3), 8B C.R.S. (1986), punishable by a presumptive range sentence of life imprisonment or death. § 18–1–105(1)(a)(IV), 8B C.R.S. (1986 & 1990 Supp.).

7. The trial court apparently compared Mershon's life sentence under the habitual criminal statute with the life sentence which may be imposed for first-time offenses, such as first degree murder, and concluded that "fewer than five offenses in the State of Colorado, all violent[,] carried as serious a penalty as the one imposed on Mr. Mershon." This is not the proper standard of

as first degree assault,[8] second degree kidnapping accomplished by use of a deadly weapon,[9] and first degree sexual assault,[10] are classified, like heroin offenses, as class 3 felonies. The fact that the legislature authorized identical punishments for these offenses suggests that it viewed violent crimes and heroin trafficking crimes to be equally serious. And, although not determinative, the legislature's assessment of the seriousness of particular offenses is entitled to great deference. *Harmelin,* 501 U.S. at ——, 111 S.Ct. at 2703; *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009–10; *Rummel,* 445 U.S. at 275–76, 100 S.Ct. at 1139–40; *Gore v. United States,* 357 U.S. 386, 393, 78 S.Ct. 1280, 1284–85, 2 L.Ed.2d 1405 (1958).

■ Taken to its logical extreme, the trial court's order would preclude the imposition of a life sentence under the habitual criminal statute in every case where the sentence is predicated on nonviolent, but serious, offenses. However, case law is replete with examples to the contrary. For example, in *Rummel,* 445 U.S. at 285, 100 S.Ct. at 1145, the Supreme Court affirmed a defendant's life sentence under the Texas habitual criminal act based on three nonviolent property offenses involving a total of $229.11 wrongfully taken. Similarly, in *People v. Gutierrez,* 622 P.2d 547, 557 (Colo.1981), we expressly held that nonviolent felony offenses can serve as predicates for a life sentence as an habitual criminal. Thus, it is clear that life sentences constitutionally can be imposed under a recidivist sentencing scheme even

though the felonies supporting the sentence do not involve violence.[11]

■ In *Gutierrez,* we recognized that "there might be circumstances in which a mandatory life sentence would constitute cruel and unusual punishment because the crimes supporting habitual criminal status taken together with the substantive crimes giving rise to the habitual criminal determination are so minor." *Id.* However, as in *Gutierrez,* Mershon's situation does not present us with a case requiring application of any such limitation. Although Mershon's crimes may not have involved violence,[12] they were, as the trial court recognized, serious offenses and there is a possibility of parole. *See* § 17–22.5–104(2)(c), 8A C.R.S. (1986). We therefore hold that the life sentence prescribed by the habitual criminal statute is not grossly disproportionate to Mershon's crimes in violation of the Eighth Amendment.

### 2

■ We next examine the standard of review which the court of appeals employed when it examined the trial court's finding of disproportionality. The People argue that the court of appeals erroneously applied an abuse of discretion standard to a question of constitutional law. We agree.

In affirming the trial court's order, the court of appeals held that "the review conducted here meets the criteria of *Solem,* and we perceive no abuse of discretion in the court's conclusion that, as to the defendant,

---

comparison when assessing the proportionality of a life sentence imposed under a recidivist statute. As the United States Supreme Court stated in *Rummel:*

[A] State cannot be required to treat persons who have committed three "minor" offenses less severely than persons who have committed one or two "more serious" offenses. If nothing else, the three-time offender's conduct supports inferences about his ability to conform with social norms that are quite different from possible inferences about first- or second-time offenders.

445 U.S. at 283 n. 27, 100 S.Ct. at 1144 n. 27. *See also Gimmy v. People,* 645 P.2d 262, 267 (Colo.1982) (noting enhanced punishment under the habitual criminal statute is appropriate when an individual has shown a propensity toward repeated criminal acts).

8. § 18–3–202, 8B C.R.S. (1986 & 1993 Supp.).

9. § 18–3–302(4), 8B C.R.S. (1993 Supp.).

10. § 18–3–402, 8B C.R.S. (1986).

11. A lack of violence in the convictions supporting an habitual criminal sentence can be an important factor in proportionality analysis when the sentence imposed is life imprisonment without the possibility of parole. *Alvarez,* 797 P.2d at 40; *Drake,* 785 P.2d at 1275; *Hernandez,* 686 P.2d at 1329. However, Mershon was sentenced under Colorado's habitual criminal statute, and is thus eligible for parole once he has served at least forty calendar years. § 17–22.5–104(2)(c), 8A C.R.S. (1986).

12. *But see supra* note 4.

the imposition of a life sentence was unconstitutional." *Mershon*, 844 P.2d at 1248. This statement incorrectly suggests that trial courts have discretion in determining whether sentences are constitutional, and that appellate courts must defer to such determinations.

 In close cases, a proportionality determination may be dependent upon factual findings, and these findings are entitled to deference on appeal if adequately supported by competent evidence in the record. *E.g., Page v. Clark*, 197 Colo. 306, 313, 592 P.2d 792, 796 (1979); *Dominion Ins. Co. Ltd. v. Hart*, 178 Colo. 451, 454, 498 P.2d 1138, 1140 (1972). However, whether a mandatory life sentence violates the Eighth Amendment is an objective question of constitutional law, and not an individualized sentencing decision subject to the exercise of discretion. *See, e.g., Cisneros*, 855 P.2d at 827 (holding that the individual characteristics of the criminal are not at issue under the *Solem* test). As such, the trial court's finding of disproportionality was not entitled to deference in this case, and should not have been reviewed by the court of appeals under an abuse of discretion standard. *See Evans v. Romer*, 854 P.2d 1270, 1274 (Colo.) (appellate courts need not defer to trial courts when reviewing questions of law), *cert. denied*, — U.S. —, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993); *Bloomer v. Boulder County Bd. of Comm'rs*, 799 P.2d 942, 944 (Colo.1990) (same).

### III

 As cross-petitioner, Mershon argues that both the trial court and the court of appeals applied a legally erroneous standard of "justifiable excuse or excusable neglect," *see* section 16–5–402(2)(d), 8A C.R.S. (1986), to bar his collateral attack on his five previous convictions.[13] According to Mershon, this error requires that his case be remanded for application of the correct standard. We disagree.

 Section 16–5–402(1), 8A C.R.S. (1986), provides that, subject to the exceptions set forth in subsection (2), "no person who has been convicted under a criminal statute of this or any other state of the United States shall collaterally attack the validity of that conviction unless such attack is commenced within the applicable time period ... following the date of said conviction." As a general rule, a defendant has three years in which to attack any felony conviction other than a conviction for a class 1 felony. *Id.* However, defendants convicted of a felony prior to July 1, 1984 had a five-year grace period in which to collaterally attack their convictions. *See People v. Fagerholm*, 768 P.2d 689 (Colo.1989). In addition, a defendant is excepted from the time bar contained in section 16–5–402(1) if his failure to assert a timely challenge to his conviction was the result of circumstances amounting to justifiable excuse or excusable neglect. § 16–5–402(2)(d), 8A C.R.S. (1986); *People v. Germany*, 674 P.2d 345, 354 (Colo. 1983).

At the hearing on Mershon's motion to dismiss, Mershon conceded that his prior convictions had not been challenged in a timely manner. However, he argued that his

**13.** Mershon also raises several challenges to the constitutionality of § 16–5–402, none of which has been preserved properly for review. For example, he argues that § 16–5–402 violates both due process and equal protection principles. He further contends that the statute is unconstitutional as applied to him because the legislature cannot limit a defendant's right to challenge an unconstitutional conviction when it is the government which is seeking to use the invalid conviction to enhance the defendant's sentence. Although Mershon raised some of these arguments in a cursory fashion before the trial court, his reasons for challenging the constitutionality of the statute have shifted throughout the appeal process. Since Mershon did not present his latest versions of these arguments to the trial court

or to the court of appeals, we decline to address them. *See, e.g., City and County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 765 (Colo. 1992) (challenges to the constitutionality of a statute not properly preserved for review in trial court should not be considered for the first time on appeal); *Estate of Stevenson v. Hollywood Bar and Cafe, Inc.*, 832 P.2d 718, 721 n. 5 (Colo. 1992) (arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal); *Committee for Better Health Care for All Colo. Citizens v. Meyer*, 830 P.2d 884, 888 (Colo.1992) (supreme court will only consider issues that actually have been determined by another court and have been properly presented for consideration).

failure to do so resulted from excusable neglect. Relying on *People v. Fultz*, 761 P.2d 242 (Colo.App.), *cert. denied* (Sept. 19, 1988), the trial court denied Mershon's motion, and the court of appeals affirmed. Under the standard employed by both of these courts, excusable neglect does not exist unless the defendant's failure to take proper steps at the proper time results from an unavoidable hindrance or occurrence. *Mershon*, 844 P.2d at 1244.

In *People v. Wiedemer*, 852 P.2d 424, 441 (Colo.1993), this court rejected the rigid definition of "excusable neglect" found in *Fultz*. Instead, we held that whether "excusable neglect" exists depends upon a balancing of the "accused person's interest in ensuring that an unconstitutional conviction is not used against him, society's interest in maintaining the integrity of the criminal justice system, and the State's interests in preserving the finality of criminal convictions and in implementing statutes requiring enhanced sentences for habitual offenders." *Id.* at 440. We also listed a variety of relevant factors which a trial court should consider in making this determination. These factors include the existence of any impediments preventing a challenge to a prior conviction, whether the defendant had a previous need to make a challenge, whether the defendant knew that a prior conviction was constitutionally infirm or had reason to question its validity, whether there existed other means to prevent use of the convictions, and the effect that the passage of time has on the government's ability to defend against the challenge. *Id.* at 441–42.

■ Here, neither the trial court nor the court of appeals had the benefit of the standards set forth in *Wiedemer* for evaluating Mershon's claim of justifiable excuse or excusable neglect. When this situation has arisen in the past, we have ordered that the case be remanded so that the trial court could address the defendant's justifiable excuse or excusable neglect claims in accordance with the correct standards. *See, e.g.*, *Robinson v. People*, 854 P.2d 231 (Colo.1993); *Vigil v. People*, 854 P.2d 230 (Colo.1993). This is because the question of whether a defendant's claim falls within the scope of the justifiable excuse or excusable neglect exception ordinarily is a question of fact to be resolved by the trial court. *People v. Heitzman*, 852 P.2d 443, 448 (Colo.1993); *Wiedemer*, 852 P.2d at 442. However, we do not believe that a remand is necessary in this case since the only ground of excusable neglect raised by Mershon in the court of appeals is meritless as a matter of law.

In the trial court, Mershon presented three grounds of justifiable excuse or excusable neglect. Specifically, Mershon argued that (1) he had never had habitual criminal charges brought against him and therefore had no reason to collaterally attack his prior convictions; (2) he had no knowledge of the limitation period imposed either by section 16–5–402 or by *Fagerholm;* and (3) his previous counsel was ineffective for failing to attack his prior convictions within the appropriate time period.

■ On appeal, Mershon contended that he had no present need to attack his prior convictions until he was charged with being an habitual criminal, without mentioning any of the other grounds which he had raised in the trial court. Since only this ground was raised in and addressed by the court of appeals, it is the only ground before this court on certiorari review. *See People v. Bossert*, 772 P.2d 618, 620 n. 5 (Colo.) (presentation of alternative argument to trial court, followed by failure to assert alternative argument in initial direct appeal, normally precludes consideration of it in subsequent post-conviction proceedings), *cert. denied*, 493 U.S. 845, 110 S.Ct. 137, 107 L.Ed.2d 96 (1989).

The court of appeals rejected Mershon's claim that he had no "present need" to challenge his prior convictions on the authority of its decision in *People v. Stephens*, 837 P.2d 231 (Colo.App.1992), *cert. dismissed as improvidently granted*, 854 P.2d 231 (Colo. 1993). *Mershon*, 844 P.2d at 1244. In *Wiedemer*, 852 P.2d at 442 n. 19, this court expressly approved of the court of appeals' reasoning in *Stephens*. We agreed that the enactment of section 16–5–402 and this court's decision in *Fagerholm* created a present need for defendants to raise constitutional challenges to their prior convictions. *Id.* Thus, the allegation that Mershon had no

present need to attack his prior convictions until he was charged as an habitual criminal is erroneous as a matter of law.

## IV

We hold that the mandatory life sentence which the trial court was required to impose on Mershon under the habitual criminal statute is not grossly disproportionate to his crimes in violation of the Eighth Amendment. We further hold that the trial court did not err in denying Mershon's collateral attack of his prior felony convictions. Although the trial court applied incorrect standards to evaluate Mershon's justifiable excuse or excusable neglect claims, the only basis for attacking these convictions which Mershon preserved for review is meritless as a matter of law. Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part. We therefore return the case to the court of appeals with directions to remand the case to the trial court for reinstatement of Mershon's sentence of life imprisonment.