JUSTICE GABRIEL, dissenting.
¶33 This case presents a narrow issue: Does a non-citizen defendant's allegation that plea counsel misadvised him of the immigration consequences of his guilty plea suffice to warrant a hearing as to whether justifiable excuse or excusable neglect should excuse the defendant's belated filing of a Crim. P. 35(c) claim alleging the ineffective assistance of counsel. Because I believe that Alvarado Hinojos's allegations here were sufficient to warrant a hearing, and because the majority's contrary view decides the very fact questions on which Alvarado Hinojos seeks to be heard and imposes on him an unrealistic duty to second-guess his counsel's advice (even though counsel was legally obligated to give him correct advice), I respectfully dissent.
I. Factual Background
¶34 The facts that Alvarado Hinojos alleged in his petition and that we must accept as true are undisputed.
¶35 Alvarado Hinojos, a non-United States citizen, pleaded guilty to menacing with a deadly weapon and third-degree assault. He stipulated to a deferred judgment on the menacing count and a probationary sentence on the assault count. The matter now before us concerns only the assault charge.
¶36 At the time of Alvarado Hinojos's guilty plea, his plea paperwork advised him that his plea "may result in deportation and/or exclusion from the United States or denial of naturalization in the United States."
*763 His plea counsel, however, advised him that his guilty plea "would not have adverse immigration consequences."
¶37 Alvarado Hinojos successfully completed both the terms of his deferred judgment and his probationary sentence. The trial court thus dismissed the menacing count and terminated the probationary sentence on the assault charge.
¶38 Approximately six years later, Alvarado Hinojos filed a Crim. P. 35(c) motion, in which, as pertinent here, he collaterally attacked his third-degree assault conviction. In this motion, Alvarado Hinojos alleged that he had received ineffective assistance from his plea counsel because counsel had incorrectly advised him that his guilty plea "would not have adverse immigration consequences." Specifically, he alleged that (1) he accepted the prosecution's plea offer based on plea counsel's advice; (2) he consulted an immigration attorney eight years after he entered his plea and only then learned that the plea, in fact, had immigration consequences; (3) he had no reason to question the validity of his plea counsel's advice until he met with the immigration attorney; and (4) his guilty plea bars him from applying for adjustment to his lawful permanent resident status and thus prevents him from remaining in the United States and renders him inadmissible here. Alvarado Hinojos acknowledged that he had filed his motion beyond the applicable eighteen-month deadline set forth in section 16-5-402(1), C.R.S. (2018), but he asserted that justifiable excuse or excusable neglect should excuse his late filing.
¶39 The postconviction court summarily denied Alvarado Hinojos's claim, finding that it was filed late and without justifiable excuse or excusable neglect. Alvarado Hinojos appealed, and in a split, unpublished decision, a division of the court of appeals reversed, concluding that Alvarado Hinojos's allegations, if true, could support a finding of justifiable excuse or excusable neglect. People v. Alvarado Hinojos , No. 15CA1780, ¶¶ 25-26, 2017 WL 3912757 (Colo. App. Sept. 7, 2017). Accordingly, the division remanded the case for a hearing. Id. at ¶ 26.
¶40 The People then sought review, and we granted certiorari.
II. Analysis
¶41 I begin by setting forth the applicable law. I then apply the pertinent principles to the facts before us.
A. Applicable Law
¶42 Section 16-5-402(1) requires a defendant to bring a collateral attack on the validity of a misdemeanor conviction within eighteen months.
¶43 Section 16-5-402(2)(d) provides an exception to this time bar and allows an otherwise untimely motion to proceed "[w]here the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect."
¶44 To be entitled to a hearing on the applicability of this exception, a defendant need not provide evidentiary support for his or her allegations. People v. Wiedemer , 852 P.2d 424, 440 n.15 (Colo. 1993). Instead, the defendant need only allege facts that, if true, would establish justifiable excuse or excusable neglect. Id.
¶45 In assessing whether a defendant has established justifiable excuse or excusable neglect, courts consider, among other things, (1) the existence of circumstances or outside influences that prevented the defendant from challenging his or her prior conviction; (2) the extent to which a defendant who had reason to question the constitutionality of a conviction investigated its validity and availed himself or herself of avenues of relief; (3) whether the defendant had any previous need to challenge his or her conviction; (4) whether the defendant either knew that his or her conviction was constitutionally infirm or had reason to question its validity; (5) whether he or she had other means of preventing the government's use of the conviction so that a postconviction challenge was previously unnecessary; and (6) the time that elapsed between the date of conviction and the defendant's challenge and the effect that such passage of time may have on the prosecution's ability to defend against the challenge. Id. at 441-42.
*764 ¶46 In addition, as to the merits, in discussing counsel's duty to advise a defendant of the immigration consequences of a guilty plea, the Supreme Court has stated:
Immigration law can be complex, and it is a legal specialty of its own. ... There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. ... When the law is not succinct and straightforward ..., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, ... the duty to give correct advice is equally clear.
Padilla v. Kentucky , 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (footnote omitted).
B. Alvarado Hinojos's Entitlement to a Hearing
¶47 Applying the foregoing principles here, I believe that Alvarado Hinojos has alleged facts that, if true, would establish justifiable excuse or excusable neglect. Accordingly, I believe that the division below correctly concluded that he was entitled to a hearing on that issue.
¶48 As noted above, Alvarado Hinojos alleged, as pertinent here, that (1) his plea counsel had advised him that his guilty plea "would not have adverse immigration consequences"; (2) he accepted the prosecution's plea offer based on counsel's advice; (3) he consulted an immigration attorney eight years after he entered his plea and only then learned that the plea, in fact, had immigration consequences; (4) he had no reason to question the validity of his plea counsel's advice before that time; and (5) his guilty plea bars him from applying for adjustment to his lawful permanent resident status and thus prevents him from remaining in the United States and renders him inadmissible here.
¶49 In my view, these allegations more than suffice to establish a viable claim for justifiable excuse or excusable neglect. If true, these allegations show that Alvarado Hinojos's plea counsel misadvised him of the immigration consequences of his guilty plea and that his reliance on that faulty advice explains why he did not file his postconviction motion on a timely basis. Moreover, I am unwilling to say that, as a matter of law, Alvarado Hinojos's plea paperwork establishes that he had a duty to second-guess counsel's advice and that his not doing so defeats any claim of justifiable excuse or excusable neglect. For present purposes, and subject to contrary proof at a hearing, I believe that a party like Alvarado Hinojos was entitled to rely on his counsel's advice. This is particularly true in the present context, in which counsel had a legal obligation to advise Alvarado Hinojos correctly as to the immigration consequences of his plea. See Padilla , 559 U.S. at 369, 130 S.Ct. 1473.
¶50 In concluding otherwise, the majority opines that Alvarado Hinojos is not entitled to a hearing in this case because his plea paperwork gave him reason to question the accuracy of his plea counsel's advice. Maj. op. ¶ 2. For several reasons, I disagree.
¶51 First, in reaching this conclusion, the majority essentially determines, as a matter of law, that Alvarado Hinojos had a reason to question the validity of his plea counsel's advice. In my view, however, this is a factual issue to be explored at a hearing. The evidence may show, for example, that Alvarado Hinojos in fact questioned his counsel about the plea paperwork and that it was in this context that counsel advised him that the plea would not have adverse immigration consequences (it is not difficult to imagine counsel responding that the plea paperwork was just required boilerplate and that the client should not be concerned). Were these the facts, it may well be that Alvarado Hinojos reasonably did not inquire further. Conversely, it may turn out that Alvarado Hinojos received the plea paperwork after his counsel advised him of the immigration consequences of his plea, that he noted the discrepancy between counsel's advice and the paperwork, and that he nonetheless chose not to inquire further. Such facts could undermine a claim of justifiable excuse or excusable neglect. Either way, I do not believe that we can say, as a matter of law, that *765 Alvarado Hinojos had a reason to question the accuracy of his counsel's advice.
¶52 Second, the majority's conclusion strikes me as unrealistic. Parties in these cases (as in many cases) often have little or no understanding of the law, and they naturally will rely on their counsel to provide proper and correct legal advice, particularly with respect to legal papers that the parties are asked to sign. This is especially true in the present context, in which plea counsel was legally obligated to provide "correct advice" regarding the immigration consequences of Alvarado Hinojos's plea. See Padilla , 559 U.S. at 369, 130 S.Ct. 1473. In these circumstances, I would not impose on a party like Alvarado Hinojos a duty, as a matter of law, to second-guess his counsel. Rather, the question of whether he had reason to question his counsel's advice is a factual one that I believe can be decided only after proper evidentiary development at a hearing.
¶53 I likewise am unpersuaded by the People's contentions that a defendant has a present need to make a timely postconviction claim as soon as the judgment enters and that under People v. Mershon , 874 P.2d 1025, 1036-37 (Colo. 1994), subsequent events can never establish a present need and are irrelevant to justifiable excuse or excusable neglect.
¶54 As an initial matter, I note that Alvarado Hinojos has never argued that the lack of a present need justified his late filing here. Accordingly, the People's argument is inapposite.
¶55 More important, the People's assertion that Alvarado Hinojos had a present need from the moment a judgment entered is so broad that it would swallow the statutory justifiable excuse/excusable neglect exception. Specifically, if present need is dispositive and if it exists from the moment a judgment enters, then in every case, a defendant would need to file a Crim. P. 35(c) motion within the statutory time limits, and justifiable excuse or excusable neglect can never apply to excuse a late filing. This analysis renders section 16-5-402(2)(d) meaningless, and we obviously cannot adopt such a construction.
¶56 Finally, I do not agree with the People's assertion that allowing Alvarado Hinojos a hearing in this case would establish a rule that would allow future defendants to extend indefinitely their time to file a Crim. P. 35(c) motion merely by failing to inquire or adopting a practice of willful ignorance. The evidence in such a case may show that a defendant's failure to inquire and willful ignorance were unreasonable, thereby defeating a claim of justifiable excuse or excusable neglect. Again, to me, this is a factual question to be determined at a hearing, and I have every confidence that a district court judge can act to avoid the kind of abuse that the People hypothesize.
¶57 For these reasons, I would conclude that Alvarado Hinojos's motion alleged facts that, if true, would entitle him to relief from the applicable time bar, and I would therefore conclude that he was entitled to a hearing on his postconviction motion.
III. Conclusion
¶58 In support of his claim of justifiable excuse or excusable neglect for his untimely Crim. P. 35(c) motion, Alvarado Hinojos alleged that his plea counsel had advised him that his guilty plea "would not have adverse immigration consequences," that he relied on this advice, and that he had no reason to question it until he met with an immigration attorney years later and learned, for the first time, that the advice was wrong. In my view, these allegations more than suffice to establish a viable claim of justifiable excuse or excusable neglect so as to entitle Alvarado Hinojos to a hearing on the question.
¶59 Accordingly, I would affirm the judgment of the division below, and I therefore respectfully dissent.
I am authorized to state that JUSTICE HOOD and JUSTICE HART join in this dissent.