The **PEOPLE of the State of Colorado,**
Plaintiff–Appellant,

v.

**John H. GASKINS, a/k/a John Harvey
Garcia, Defendant–Appellee.**

No. 94CA0743.

Colorado Court of Appeals,
Div. A.

Jan. 25, 1996.

Rehearing Denied March 7, 1996.

Certiorari Denied Sept. 23, 1996.

A. William Ritter, Jr., Denver District Attorney, Henry R. Reeve, Deputy District Attorney, Denver, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Frances S. Brown, Chief Appellate Deputy State Public Defender, Denver, for Defendant–Appellee.

Opinion by Chief Judge STERNBERG.

The People appeal the results of a proportionality review of a life sentence given defendant, John Harvey Gaskins, after his adjudication as an habitual criminal. The trial court found the sentence to be disproportionate to defendant's crimes in violation of the cruel and unusual punishment clauses of the

United States and Colorado Constitutions and resentenced him to eight years in prison. We agree the sentence was disproportionate but remand for resentencing.

## I. Procedural background

In 1987, defendant was convicted of felony attempted theft and misdemeanor third degree assault. The jury also found defendant to be an habitual criminal based on three prior felony convictions. Therefore, the trial court sentenced him to life imprisonment with parole eligibility in forty years, as required by the "big" habitual criminal statute, § 16–13–101(2), C.R.S. (1986 Repl.Vol. 8A).

In a previous appeal, defendant asserted that the life sentence constituted cruel and unusual punishment under the Eighth Amendment. He argued that the trial court erred in failing to conduct a proportionality review. A division of this court agreed, vacated the sentence, and remanded for a proportionality review and for resentencing. The division held that the trial court was better suited to conduct the review than the appellate court because the focus was on the defendant's record in its entirety, rather than upon the seriousness of the present offense. *People v. Gaskins,* (Colo.App. No. 88CA0159, May 17, 1990) (not selected for official publication).

On certiorari review, the supreme court agreed that a proportionality review of the life sentence was required under the United States and Colorado Constitutions and affirmed this court's remand to the trial court to conduct the proportionality review. *People v. Gaskins,* 825 P.2d 30 (Colo.1992).

On remand, the trial court analyzed the sentence by applying the criteria set forth in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). There, the Supreme Court adopted a three-pronged analysis to guide courts in their proportionality review of life sentences under the Eighth Amendment: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *See People v. Mershon,* 874 P.2d 1025 (Colo.1994).

Applying the first *Solem* criterion, the trial court concluded that defendant's crimes in combination were not grave and serious and that, accordingly, he had raised an inference of disproportionality. Thus, it went on to conduct an extended proportionality review, in accordance with the second and third prongs of the *Solem* analysis, comparing defendant's sentence with those imposed on others in Colorado and in other jurisdictions. At the conclusion of this review, the trial court found defendant's life sentence to be unconstitutionally disproportionate to his crime and resentenced him to eight years in prison.

The People appeal the finding of disproportionality, arguing that defendant's crimes were grave and serious, thus entitling him to only an abbreviated review. In the alternative, the People argue that, even if defendant's life sentence is unconstitutionally disproportionate, he should have been resentenced under the "little" habitual criminal statute, § 16–13–101(1), C.R.S. (1986 Repl.Vol. 8A), rather than in the aggravated range for the triggering offense. We affirm the finding of disproportionality, but vacate the sentence and remand for resentencing.

## II. Standard of review

■ At the outset we note that an appellate court is not bound by a trial court's conclusions of law. *Evans v. Romer,* 854 P.2d 1270 (Colo.1993). Thus, proportionality determinations must be reviewed *de novo* on appeal. As stated in *People v. Mershon, supra,* 874 P.2d at 1035, "whether a mandatory life sentence violates the Eighth Amendment is an objective question of constitutional law, and not an individualized sentencing decision subject to the exercise of discretion." *See also People v. Anaya,* 894 P.2d 28 (Colo. App.1994).

## III. Abbreviated review— first *Solem* prong

■ The first *Solem* criterion is whether the underlying offenses are so lacking in gravity and seriousness that the inference of sentence disproportionality is raised. If the crimes supporting a habitual criminal sen-

tence do include grave or serious offenses, and the defendant is eligible for parole, no further proportionality analysis is required. *See Alvarez v. People,* 797 P.2d 37 (Colo. 1990); *People v. Drake,* 785 P.2d 1257 (Colo. 1990); *People v. Hernandez,* 686 P.2d 1325 (Colo.1984).

To determine the gravity and seriousness of defendant's crimes, objective criteria are employed. Included in this evaluation are considerations such as the harm caused or threatened to the victim and society and the defendant's culpability. Significant queries in this analysis are whether the crime was a lesser included offense, whether it was an attempted or a completed crime, whether the crimes involved violence, and the absolute magnitude of the crime. *Solem v. Helm, supra; People v. Gaskins, supra.*

We apply these criteria to each of the underlying crimes as the facts of those crimes were found by the trial court. The first of these occurred in 1976 when defendant was arrested for refusing to leave a theater. While handcuffed and being transported in the police car, he kicked repeatedly at the officer who was driving the car. The officer's fingers were injured. Defendant was convicted of second degree assault, a Class 4 felony, and was sentenced to the Colorado State Reformatory for up to four years.

In 1981, defendant attempted to break into an occupied residence by putting his hand through the back porch door. The owner and a friend confronted defendant and detained him for police. This incident resulted in a conviction of attempted first degree criminal trespass, a Class 5 felony, and a sentence of 18 months in the Department of Corrections was imposed.

Later in 1981, defendant broke into an empty apartment and removed some items. Shortly thereafter, he was apprehended as he appeared to be returning to the apartment. He was convicted of theft, a Class 4 felony, and sentenced to four years in the Department of Corrections.

The triggering offense for defendant's life sentence as an habitual criminal occurred in 1987. Late one night, a hotel employee discovered him loading a vending machine from the hotel lobby into the trunk of a car. In the ensuing confrontation, defendant picked up a golfball-sized rock or stone, enclosed it in his fist, and punched the employee in the nose. The employee's nose was broken as a result, and defendant also bit the employee's arm. Defendant was convicted of Class 5 felony theft and misdemeanor third degree assault.

In the two cases involving violence, the physical harm suffered was relatively minor: the policeman's injured fingers and the hotel employee's broken nose. Though punching the employee while holding a stone was certainly a violent act, defendant was charged only with misdemeanor assault.

Defendant's crimes caused or threatened only minimal harm to society. The 1976 assault occurred after he was already in custody from a minor disturbance in a theater, and the other three crimes were essentially attempts, in that he was literally caught in the act. Nor was the magnitude of defendant's crimes great. The 1981 apartment break-in and the attempted vending machine theft each involved items worth only a few hundred dollars.

We consider next defendant's culpability. The evidence indicates that all of the crimes were intentionally committed, but the trial court noted that the first two crimes occurred while defendant was intoxicated. Notwithstanding that fact, defendant's culpability for his acts does carry some weight against him in our evaluation of the gravity of his offenses.

Finally, we look at the types of crimes found to be "grave and serious" in other first-prong *Solem* proportionality review cases in Colorado. In *Wilczynski v. People,* 891 P.2d 998 (Colo.1995), the defendant had been convicted of four felonies, including second degree murder and second degree burglary. *People v. Mershon, supra,* involved six felony convictions, including distribution and sale of heroin, possession of dangerous drugs with intent to dispense, and robbery. *Alvarez v. People, supra,* dealt with six felony convictions, including aggravated robbery, second degree burglary, and first degree

criminal trespass. The defendant in *People v. Drake, supra,* was convicted of four felonies, including accessory to first degree murder. In *People v. Hernandez, supra,* the defendant had been convicted of seven felonies, including robbery, second degree burglary, and sale of narcotic drugs. *People v. Anaya, supra,* involved four felony convictions, including felony menacing, felony escape, first degree assault, and attempted aggravated robbery. There were six felony convictions in *People v. Penrod,* 892 P.2d 383 (Colo.App.1994), including attempt to commit second degree murder, robbery, aggravated motor vehicle theft, first degree assault, and second degree burglary. Finally, the defendant in *People v. Austin,* 799 P.2d 408 (Colo. App.1990), had been convicted of seven felonies, including robbery and attempted first degree criminal trespass.

Analysis of these proportionality review cases leads to the conclusion that the crimes of those defendants were much more serious than those of this defendant. To approve a life sentence in this case would be to lower drastically the "grave and serious" threshold.

After considering all of the objective criteria, and analyzing other Colorado abbreviated proportionality review cases, we conclude that, in combination, defendant's crimes are so lacking in gravity and seriousness as to give rise to an inference of sentence disproportionality. Thus, our sentence review must extend to the second and third prongs of the *Solem* test.

## IV. Extended proportionality review

### A. Propriety of evidence received

■ At the outset, we disagree with the People's argument that the extended *Solem* review evidence that the trial court received on this issue was improper. The trial court has the discretion to control the character and scope of the evidence presented concerning constitutional proportionality. *People v. Mershon, supra.* The court received evidence of Colorado sentencing statistics and the statutes of nearby states, both appropriate items of evidence for the *Solem* analysis.

### B. Second prong of *Solem* test

■ The second prong of the *Solem* test involves the comparison of sentences imposed on similarly situated offenders in this jurisdiction. Defendant presented to the trial court statistical evidence, which was obtained from the State Court Administrator's Office, of habitual criminal sentencing cases from July 1975 to January 1993. Out of 240 cases, 43 received life sentences under the habitual criminal statute; however, only three of the life sentences were based upon a Class 5 felony conviction as the triggering substantive offense.

Because defendant's sentence was one of those three, the court was left with two other "similarly situated" offenders to use for comparison. The defendants in both of those instances had more prior convictions than did defendant here, and those offenses were much more serious. For example, the other offenders' prior convictions included second degree kidnapping, rape, aggravated robbery, and assault with a deadly weapon. Thus, sentencing this defendant to life imprisonment puts him in a category by himself with respect to harshness of the penalty received as compared to the underlying crimes committed.

■ Additionally, the General Assembly's current evaluation of the seriousness of the offense at issue is a factor that can be considered in determining whether defendant's sentence is grossly disproportionate. *People v. Penrod, supra.* As of July 1, 1993, a similarly situated defendant would be subjected only to a maximum term of sixteen years as an habitual offender, a difference of twenty-four years. Section 16–13–101(1.5), C.R.S. (1995 Cum.Supp.).

### C. Third prong of *Solem* test

■ The third prong of the *Solem* test involves a review of the sentences imposed for commission of the same crime in other jurisdictions. Defendant submitted to the trial court a summary of all fifty state habitual criminal statutes. The court then specifically compared Colorado's statute to those of several neighboring states. In each instance, if defendant had been before such courts, he

would have been subjected to a sentence or sentence range not nearly so harsh as the one he actually received. Thus, sentencing defendant to life imprisonment is disproportionate to allowable sentencing for similar offenses in neighboring states.

In light of all of these factors, we agree with the trial court's determination that defendant's sentence was constitutionally disproportionate.

## V. Resentencing

■■■ The People argue that, even if defendant's life sentence was unconstitutionally disproportionate, the trial court erred by not resentencing him under the "little" habitual criminal statute. We conclude that sentencing under the "little" habitual criminal statute is permissible but not mandatory.

Two provisions for sentencing habitual criminals were in effect at the time defendant was sentenced. The "big" habitual criminal statute, § 16–13–101(2), C.R.S. (1986 Repl. Vol. 8A), mandated a life sentence for persons convicted of a felony who had previously been convicted of three separate felonies. The "little" habitual criminal statute, § 16–13–101(1), C.R.S. (1986 Repl.Vol. 8A), applied to persons convicted of a felony carrying a maximum penalty in excess of five years and who had been previously convicted of two separate felonies within ten years of the triggering offense. It required a sentence of twenty-five to fifty years.

Here, after finding that defendant's "big" habitual life sentence was unconstitutionally disproportionate, the trial court did not consider the "little" habitual criminal statute sentencing range, but rather resentenced defendant to a presumptive eight-year maximum aggravated sentence, pursuant to § 18–1–105(1)(a)(IV), C.R.S. (1986 Repl.Vol. 8B). In our view, the trial court erred in not considering the range of sentences for habitual offenders under § 16–13–101(1).

Both of the habitual criminal statutes provide that every person convicted of the relevant number of felonies "shall be adjudged an habitual criminal and shall be punished" in accordance with the terms of such statutes. Sections 16–13–101(1) and 16–13–

101(2). In other words, a "class" is created consisting of those defendants adjudged habitual criminals, and the statutes prescribe specific punishments to be imposed upon those who incur that status upon their conviction of subsequent felonies. *See People v. Anderson,* 43 Colo.App. 178, 605 P.2d 60 (1979).

Because the jury had not made appropriate findings on defendant's status under the "little" habitual statute, the trial court refused to consider sentencing under that statute. However, in so ruling, the trial court did not have the benefit of recent holdings of this court that jurors are not required to make any special findings with respect to each element specified by § 16–13–101. *People v. Chambers,* 900 P.2d 1249 (Colo.App. 1994); *People v. Windsor,* 876 P.2d 55 (Colo. App.1993).

In *Chambers,* the defendant argued that the court erred in not requiring the jury to determine whether his previous convictions had occurred within ten years of the commission of his current offense. However, the dates of his prior felonies were specified both by the charges and by the jury instructions. Accordingly, the division held that the jury's findings necessarily carried with them a determination that the prior convictions occurred within ten years of the predicate offense. Here, as in *Chambers,* the dates of defendant's three prior felonies were included in the habitual criminal charges against him and were given in the jury instructions. Those dates demonstrated that defendant met or exceeded the criteria for sentencing under the "little" habitual criminal statute. Thus, separate factual findings were not necessary with respect to that statute, and sentencing under its terms should have been considered as one available option by the trial court.

■■■ Defendant argues that if the trial court is instructed to resentence him under the habitual offender statutes, then he should be sentenced according to the July 1, 1993, statutory amendments. After that date, a "big" habitual sentence is four times the maximum in the presumptive range, and a "little" habitual sentence is three times the presumptive range maximum. *See* § 16–13–

101(1.5) and § 16–13–101(2), C.R.S. (1995 Cum.Supp.). Defendant's assertion is that, as a matter of policy, the amended statute is more reflective of the current legislative determination of proper sentencing than the statutes that were in effect when defendant committed the triggering crime in 1987.

Contrary to defendant's argument, we are not at liberty to ignore the General Assembly's explicit directive that the amendments to the habitual criminal statutes apply only to offenses committed on or after July 1, 1993. *People v. Kemp*, 885 P.2d 260 (Colo.App. 1994). However, in determining the appropriate sentence, the trial court may consider as one factor the General Assembly's current evaluation of the appropriate sentence to one in the position of this defendant. *See People v. Penrod, supra.*

Because the trial court was of the view that it could not consider the penalty provided under the "little" habitual statute, and because sentencing under that statute is one option available to the trial court, the sentence is vacated and the cause is remanded for resentencing consistent with the views set forth in this opinion.

HUME and MARQUEZ, JJ., concur.