COLORADO COURT OF APPEALS                          2016COA117

---

Court of Appeals No. 15CA0545
Adams County District Court No. 13CR1980
Honorable John E. Popovich, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Clifton Eugene McRae,

Defendant-Appellee.

---

SENTENCE VACATED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE GRAHAM
Booras and Kapelke*, JJ., concur

Announced August 11, 2016

---

Dave Young, District Attorney, Michael Milne, Senior Deputy District Attorney, Brighton, Colorado, for Plaintiff-Appellant

April M. Elliott, Alternative Defense Counsel, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1    A jury convicted defendant, Clifton Eugene McRae, of distribution of a schedule II controlled substance (methamphetamine)[1] and possession of drug paraphernalia.[2]  After completing a proportionality review of McRae's sentence, the trial court concluded that a sixty-four-year sentence to the custody of the Department of Corrections would be grossly disproportionate to his crimes and sentenced him to sixteen years' incarceration.  The People appeal McRae's sentence.  We vacate McRae's sentence and remand for the trial court to conduct an extended proportionality review.

## I. Eighth Amendment Proportionality Review

¶ 2    The Eighth Amendment to the United States Constitution forbids imposition of a sentence grossly disproportionate to the severity of the crime committed.  *Solem v. Helm*, 463 U.S. 277, 284 (1983); *see* Colo. Const. art. II, § 20; *see also Close v. People*, 48 P.3d 528, 532 (Colo. 2002).

---

[1] Ch. 333, sec. 10, § 18-18-405(2)(a)(I)(A), 2013 Colo. Sess. Laws 1909.

[2] Ch. 333, sec. 28, § 18-18-428(1), 2013 Colo. Sess. Laws 1924.

¶ 3    Under the habitual criminal statute, a person convicted of a felony who has been previously convicted of three felonies shall be adjudicated a habitual criminal and shall be sentenced to four times the maximum of the presumptive range for the class of felony of which the person is convicted.  *See* § 18-1.3-801(2)(a), C.R.S. 2015.

¶ 4    "A defendant is always entitled to a proportionality review when sentenced under the habitual criminal statute." *People v. Anaya*, 894 P.2d 28, 32 (Colo. App. 1994); *see People v. Deroulet*, 48 P.3d 520, 526 (Colo. 2002).

¶ 5    An abbreviated proportionality review requires a court to consider the seriousness of a defendant's underlying crimes together with the triggering crime to determine whether, in combination, these crimes are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate.  *People v. Loyas*, 259 P.3d 505, 513 (Colo. App. 2010).  The Colorado Supreme Court has determined "the crimes of aggravated robbery, robbery, burglary, accessory to first-degree murder, and narcotic-related crimes are all 'grave or serious' for the purposes of proportionality review."  *Deroulet*, 48 P.3d at 524; *see People v.*

*Gaskins*, 825 P.2d 30, 37 (Colo. 1992) ("Sale of narcotic drugs is viewed with great seriousness because of the grave societal harm caused by sale of illegal drugs and the evils associated with their use.").

¶ 6     If an abbreviated proportionality review gives rise to an inference of gross disproportionality, the court should then engage in an extended proportionality review. *People v. Hargrove*, 2013 COA 165, ¶¶ 30-31. In an extended proportionality review, the court compares the defendant's sentence to sentences imposed on other defendants who committed the same crime, both in this jurisdiction and in other jurisdictions. *Deroulet*, 48 P.3d at 524.

¶ 7     "Generally, a trial court is afforded broad discretion in sentencing, and its decision will not be overturned absent an abuse of that discretion." *People v. Reese*, 155 P.3d 477, 479 (Colo. App. 2006). However, we review a trial court's proportionality ruling de novo. *Rutter v. People*, 2015 CO 71, ¶ 12.

## II. Whether a Court May Consider Changes in Sentencing

¶ 8     In 1994, a division of this court held that "when the General Assembly subsequently amends a criminal sentencing statute, even

3

though the statute is to be applied prospectively, the trial court may properly consider it when determining whether a defendant's sentence [is] grossly disproportionate." *Anaya*, 894 P.2d at 32.

¶ 9    *Anaya* relied in part on *People v. Penrod*, 892 P.2d 383, 388 (Colo. App. 1994), which also concluded that a "substantial legislative change in penalties . . . should be considered in determining whether [a] defendant's sentence is grossly disproportionate." *See also Hargrove*, ¶ 20 (stating that an amendment to a statute may be considered in determining whether the triggering or predicate offenses should be considered grave or serious for purposes of proportionality review); *People v. Gaskins*, 923 P.2d 292, 296 (Colo. App. 1996) ("[T]he General Assembly's current evaluation of the seriousness of the offense at issue is a factor that can be considered in determining whether defendant's sentence is grossly disproportionate.").

¶ 10    In 2014, the Colorado Supreme Court accepted certiorari in *Rutter* to determine "[w]hether a court, when conducting an abbreviated proportionality review of a habitual criminal sentence, can consider the [G]eneral [A]ssembly's subsequent reclassification of a crime and/or amendment of the habitual criminal statute that

made an underlying crime inapplicable for purposes of a habitual criminal adjudication." ¶ 1 n.1.  But the court ultimately did not address that question and instead concluded

> we do not reach the question of whether courts can consider legislative changes when conducting an abbreviated proportionality review of a habitual criminal sentence because the legislature has made no change, either prospectively or retroactively, with regard to the triggering offense in this case, manufacturing a schedule II controlled substance.

*Id.* at ¶ 13.[3]

---

[3] The supreme court has since granted certiorari in *Melton v. People* on the following issues:

> [REFRAMED] Whether a drug possession conviction constitutes a grave or serious offense.
>
> Whether a court, when conducting an abbreviated proportionality review of a habitual criminal sentence, can consider the General Assembly's subsequent reclassification of a crime and/or amendment of the habitual criminal statute that made an underlying crime inapplicable for purposes of a habitual criminal adjudication.
>
> Whether a twenty-four year sentence is cruel and unusual punishment for a drug possession conviction enhanced under the habitual criminal statute where, based upon

## III. Senate Bill 13-250

¶ 11    In May 2013, the General Assembly passed Senate Bill 13-250, which reclassified drug offenses in Colorado and reduced sentences for those offenses. *See generally* Ch. 333, 2013 Colo. Sess. Laws 1900-44 (hereinafter SB 13-250). The effective date of SB 13-250 was October 1, 2013. Ch. 333, sec. 71, 2013 Colo. Sess. Laws 1943.

¶ 12    In pertinent part, SB 13-250 reclassified class 3 and class 4 felonies for drug offenses to level 3 and level 4 drug felonies. A level 3 drug felony is punishable by a term of imprisonment between two and four years; a level 4 drug felony is punishable by a term of imprisonment between six and twelve months. These changes significantly reduced the length of incarceration for these offenses. *Compare* § 18-1.3-401(1)(a)(V)(A), C.R.S. 2015 (presumptive range for a class 3 felony is four to twelve years' imprisonment), *with* § 18-

---

revisions to the drug statutes and habitual criminal statute, the defendant would not be eligible for habitual sentencing and would receive a two year maximum sentence.

[REFRAMED] Whether a theft conviction constitutes a grave or serious offense.

No. 14SC282, 2016 WL 490208 (Colo. Feb. 8, 2016).

18-405(2)(c), C.R.S. 2015; *compare* § 18-1.3-401(V)(A) (presumptive range for a class 4 felony is two to six years' imprisonment), *with* § 18-18-403.5(2)(a), C.R.S. 2015.

¶ 13 Additionally, the General Assembly removed many narcotics-related convictions from consideration for habitual criminal proceedings. Ch. 333, sec. 36, § 18-1.3-801, 2013 Colo. Sess. Laws 1927; *see* § 18-1.3-801(2)(b), C.R.S. 2015.

### IV. McRae's Crimes

¶ 14 In this case, McRae's triggering offense was distribution of a schedule II controlled substance (methamphetamine). The underlying facts of that conviction were that McRae sold 6.97 grams of methamphetamine to a police confidential informant. McRae committed this crime on July 2, 2013 — after SB 13-250 was signed into law but before its effective date.

¶ 15 McRae's habitual criminal convictions are as follows:

- Possession of a schedule II controlled substance (a class 4 felony). McRae was arrested on outstanding warrants, and the vehicle he was driving was searched. Police officers found a canvas bag containing cocaine, methamphetamine, marijuana, and drug paraphernalia.

7

- Possession with intent to distribute a schedule II controlled substance (a class 3 felony). McRae was contacted at a hotel by police officers. During a search of the room, officers located methamphetamine, materials commonly used to make and sell methamphetamine, and drug paraphernalia.

- Possession of a schedule II controlled substance (a class 4 felony). McRae was arrested at a department store for giving police officers a false name. When he was processed at the police department, officers found a small amount of methamphetamine on his person.

- Possession of a schedule II controlled substance (a class 4 felony). McRae was in a vehicle stopped by officers. Officers observed two bags of narcotics in the car — a bag of cocaine weighing 3.83 grams and a bag of methamphetamine weighing 28.22 grams.

- Attempted theft (a class 5 felony). McRae stole a snap-on blue point multimeter, a snap-on timing light, and a jigsaw from a garage and pawned those items.

- Possession with intent to distribute a schedule IV
  controlled substance (a class 5 felony). Officers
  responded to a car on fire that was registered to McRae.
  McRae was arrested on an outstanding warrant and
  during his search incident to arrest officers found
  approximately .25 ounces of methamphetamine,
  marijuana, empty plastic baggies, and drug
  paraphernalia.

¶ 16    At the time of his arrest, McRae's triggering crime was
punishable by a maximum of sixteen years' incarceration, and as a
habitual criminal that sentence multiplied to sixty-four years.[4]
Under SB 13-250, his triggering offense was now a level 3 drug
felony punishable by two to four years in prison with a maximum
habitual criminal sentence of sixteen years in custody.

## V. Application

¶ 17    The People first contend the trial court entered an illegal
sentence because it lacked statutory authority to retroactively apply
SB 13-250. We agree that retroactive application of the statute

---

[4] McRae's conviction was for an extraordinary risk class 3 felony.

would have been unlawful but further conclude that the trial court did not retroactively apply SB 13-250.

¶ 18    "A sentence that is beyond the statutory authority of the court is illegal." *Anaya*, 894 P.2d at 31. "Courts are limited to imposing sentences within the statutory range authorized by the General Assembly and have no jurisdiction to enter sentences that are inconsistent with their sentencing authority as statutorily defined." *Id.*

¶ 19    The People argue that because SB 13-250 was expressly prospective, the court's application of the statute created an illegal sentence. However, "whether a statute applies retroactively is a separate and distinct question from whether a defendant's sentence is constitutionally proportionate." *Rutter*, ¶ 35 (Gabriel, J., dissenting). Here, McRae requested the court review his sentence for proportionality purposes, and a defendant's sentence is always subject to the Eighth Amendment's prohibition on cruel and unusual punishment. *See Deroulet*, 48 P.3d at 524.

¶ 20    Consequently, the court, acknowledging "that the statute is not retroactively applicable," did not exceed its statutory authority by further considering SB 13-250's effect while conducting a

10

proportionality review. *See Hargrove*, ¶ 20; *Gaskins*, 923 P.2d at 296; *Anaya*, 894 P.2d at 32. Proportionality is a distinct legal concept apart from retroactivity of a statute, and the court did not violate its statutory authority by reaching the conclusion that SB 13-250, while prospective, was relevant to proportionality.

¶ 21 Second, the People contend that because McRae's triggering offense and five of his prior convictions are per se grave or serious under supreme court precedent, his sixty-four-year habitual sentence failed to raise an inference of gross disproportionality. Thus, the People argue the court erred in finding such an inference and sentencing McRae to sixteen years. We disagree but conclude it is necessary to remand this case to the trial court to conduct an extended proportionality review under *Deroulet* and *Solem*.

¶ 22 Abbreviated proportionality review is used to analyze the offenses in question to determine whether, in combination, they are so lacking in gravity or seriousness as to suggest that the mandated habitual criminal sentence is grossly disproportionate. *People v. Cooper*, 205 P.3d 475, 479 (Colo. App. 2008) (citing *Deroulet*, 48 P.3d 520). "An abbreviated proportionality review involves two sub-parts, namely comparing the gravity of the offense and the severity

of the punishment." *Deroulet*, 48 P.3d at 524. While a court may rely on a per se grave or serious determination by the supreme court during an abbreviated review, a court may also consider additional factors to determine the gravity of an offense, including the magnitude of the offense, whether the offense involved violence, whether the offense is a lesser included offense or an attempt, and the motive of the defendant. *Cooper*, 205 P.3d at 479-80 (citing *Gaskins*, 825 P.2d at 36-37). The court must then consider the severity of the punishment to determine whether a defendant's sentence is grossly disproportionate. *Deroulet*, 48 P.3d at 524. Additionally, "[t]he General Assembly's current evaluation of the seriousness of the offense at issue is a factor that can be considered in determining whether [a] defendant's sentence is grossly disproportionate." *Gaskins*, 923 P.2d at 296; *see Hargrove*, ¶ 20; *Anaya*, 894 P.2d at 32; *Penrod*, 892 P.2d at 388.

¶ 23    Here, acknowledging that *Deroulet* classified all narcotics-related offenses as per se grave or serious, the court further found:

> [B]ased upon the proffer . . . both the
> triggering offense, to which this Court heard
> the testimony during the course of trial, and
> also the predicate offenses; A, did not involve
> any weapons or any violence; B, were all drug

related; C, the Court notes that although they were distribution cases based upon the proffer the Court notes that they were I think not substantial distribution cases for the purposes of monetary gain but for . . . basically personal use.

. . . .

The Court considering, number one, the fact that these are grave and serious offenses, however, the Court notes that there was mitigation within the establishment of . . . grave and serious offenses, the Court finds under an Eighth Amendment analysis that the sentence that would have been imposed under the new statute, which was enacted approximately two months after the [crime], that the mandatory sentence would be essentially 25 percent of the 64 year mandated sentence.

The Court therefore finds and concludes under the language of *Hargrove*, under the language of *Anaya*, and under the Eighth Amendment, this Court does find and conclude based upon the aforesaid findings that the sentencing disparity between 16 and 64 years . . . is grossly disproportionate.

The court also noted that the legislative amendments did not alter the elements of McRae's crimes but instead reduced the penalties for that criminal conduct.

¶ 24     We conclude the trial court did not err in considering factors additional to the supreme court's per se grave or serious

13

classification of narcotics offenses. Proportionality review should always focus on the individual crimes committed and the facts of those crimes to determine proportionality. *Deroulet*, 48 P.3d at 526 ("A statutory scheme cannot guarantee a sentence that is constitutionally proportionate to a particular defendant convicted of a particular crime under particular circumstances."); *see Close*, 48 P.3d at 542 ("[W]e thus utilize the considerations articulated in *Solem* to consider, under the facts of this case, whether the . . . convictions are grave or serious."). In this case the court looked at the mitigating factors surrounding the charged crimes — that they lacked violence and were drug related, and the substances were meant for personal use — in concluding that the crimes lacked the seriousness to suggest sixty-four years in prison was proportionate. The court noted that McRae's sentence was four times as long as a sentence for the same crime committed three months later. *See Deroulet*, 48 P.3d at 524; *Hargrove*, ¶ 20; *Gaskins*, 923 P.2d at 296. We perceive no error in this analysis.

¶ 25    The trial court did not engage in the prohibited "fine-tuning" of sentences the supreme court warned about in *Deroulet*. 48 P.3d at 527 ("[C]ourts will rarely be in the position to adjust a sentence to a

term of years by a handful of years in either direction; to engage in such fine-tuning goes beyond the search for gross disproportionality and improperly injects courts into the realm of determining specific sentencing schemes, which is the province of the General Assembly."). Instead, the court reviewed the General Assembly's newly adopted sentencing scheme in determining that the severity of McRae's punishment gave rise to an inference of gross disproportionality. The court's ultimate sixteen-year sentence comported with the current legislatively mandated sentencing scheme. *See id.* ("Case law is clear that legislatively mandated sentencing schemes are to be given great deference by courts engaging in proportionality reviews.").

¶ 26 Nor do we conclude that the trial court violated the spirit of *Rutter* in coming to its conclusion. *Rutter* specifically left open the question addressed by the court here, where McRae's triggering offense was reclassified by the General Assembly. In *Rutter* "the legislature . . . made no change, either prospectively or retroactively, with regard to the triggering offense," ¶ 13, and so the court declined to answer what effect a change to a triggering offense might have. Until the supreme court indicates otherwise, *Hargrove,*

15

*Gaskins,* and *Anaya,* which direct courts to consider subsequent amendments to criminal sentencing statutes when conducting abbreviated proportionality reviews, persuade us and are binding on the trial courts.

¶ 27 We are tempted to agree with the trial court's determination that the severity of McRae's sentence was constitutionally disproportionate to the gravity of his crimes. Those crimes, although narcotics related, did not include violence and were done largely to support a personal drug habit. We can see why the trial court viewed the penalty as harsh when it compared the triggering offense with the General Assembly's current evaluation of the seriousness of that offense. It may have been reasonable to conclude that a sixty-four-year sentence was grossly disproportionate.

¶ 28 However, after conducting McRae's abbreviated proportionality review, the trial court failed to conduct a further extended proportionality review. "An extended proportionality review involves a comparison of the sentences imposed on other criminals who commit the same crime in the same jurisdiction and a comparison

of the sentences imposed for commission of the same crime in other jurisdictions." *Deroulet*, 48 P.3d at 524.

¶ 29 While the trial court looked to the amended sentencing laws to compare McRae's sentence to that of other criminals committing the same crime in Colorado, it did not have specific instances of sentences within and outside of Colorado to compare to McRae's sentence. Because both the United States Supreme Court and Colorado Supreme Court approve of the use of that objective criterion, we conclude it is necessary to vacate McRae's sentence so that the court can conduct an extended proportionality review. *See Solem*, 463 U.S. at 292 ("In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."); *Deroulet*, 48 P.3d at 524 (same).

## VI. Conclusion

¶ 30 The sentence is vacated and the case is remanded to the trial court for an extended proportionality review.

JUDGE BOORAS and JUDGE KAPELKE concur.