COLORADO COURT OF APPEALS                    **2017COA91**

Court of Appeals No. 16CA0481
El Paso County District Court No. 15CR1403
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Scott Alan Oldright,

Defendant-Appellant.

SENTENCE VACATED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE FREYRE
Ashby, J., concurs
Hawthorne, J., concurs in part and dissents in part

Announced June 29, 2017

Cynthia H. Coffman, Attorney General, Brian M. Lanni, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robin M. Lerg, Alternate Defense Counsel, Montrose, Colorado, for Defendant-Appellant

¶ 1      Defendant, Scott Alan Oldright, appeals the trial court's order denying his request for an extended proportionality review. We vacate the sentence and remand for resentencing and an extended proportionality review.

## I. Background

¶ 2      A jury convicted Oldright of first degree assault. According to the prosecution's evidence, Oldright hit the victim in the head with a metal rod. The victim lost consciousness. When the victim regained consciousness, he wandered outside, still bleeding, and asked a stranger for help before he lost consciousness again. He suffered a fractured skull, a concussion, and two deep lacerations.

¶ 3      Oldright's theory at trial was that he did not intend to hurt the victim. Rather, he struck the victim to prevent property damage that could otherwise have occurred because the victim was fighting with two other men.

¶ 4      Following trial, the court adjudicated Oldright a habitual criminal, and sentenced him to sixty-four years in prison. Oldright's prior offenses included aggravated driving after revocation prohibited, forgery, fraud by check, theft by receiving, and theft.

1

¶ 5    The trial court conducted an abbreviated proportionality review.  It concluded that Oldright's triggering offense — first degree assault — was per se grave and serious.  It then acknowledged that although Oldright's prior convictions "arguably [did] not rise to the level of grave and serious," the triggering offense was so serious that no inference of disproportionality existed.  In the alternative, the court concluded that each of the prior convictions was "serious" because each had been classified as a felony by the General Assembly.  The court reasoned that the existence of five prior felonies, combined with a grave and serious triggering offense, obviated the need for a "more thorough or in-depth proportionality review."

¶ 6    We agree with the trial court that first degree assault is a grave and serious offense.  However, because the court did not consider the fact that the General Assembly has reclassified three of Oldright's prior convictions to misdemeanors (making them an ineligible basis for habitual sentencing) and one of the prior felonies from a class 4 felony to a class 5 felony, we disagree that each of Oldright's prior offenses is serious.  Therefore, we vacate the

2

sentence and remand for an extended proportionality review of Oldright's habitual criminal sentence.

## II. Proportionality Review

¶ 7     Oldright contends that the court erred in two ways. First, he argues that the court failed to consider his version of circumstances for the triggering offense that showed the crime was not grave or serious. Second, he asserts that the court erred in concluding that all of his prior convictions were "serious" by virtue of them being felonies. He argues that, as part of the abbreviated proportionality review, the court should have considered the General Assembly's reclassification of the prior offenses. We reject his first argument and agree with the court that first degree assault is a grave and serious offense. We agree with his second argument and conclude that an extended proportionality review is warranted under the circumstances of this case.

### A. Legal Principles

¶ 8     Whether a sentence is constitutionally disproportionate is a question of law that we review de novo. *Rutter v. People*, 2015 CO 71, ¶ 12. Both the United States and Colorado Constitutions prohibit cruel and unusual punishment, including grossly

disproportionate prison sentences. *See Ewing v. California*, 538 U.S. 11, 20 (2003); *Close v. People*, 48 P.3d 528, 539 (Colo. 2002). To ensure sentences are not disproportionate, "a criminal defendant is entitled, upon request, to a proportionality review of his sentence under Colorado's habitual criminal statute." *People v. Deroulet*, 48 P.3d 520, 522 (Colo. 2002); *People v. Anaya*, 894 P.2d 28, 32 (Colo. App. 1994) ("A defendant is always entitled to a proportionality review when sentenced under the habitual criminal statute.").[1]

¶ 9       When a defendant challenges a sentence on proportionality grounds, the reviewing court must initially complete an abbreviated proportionality review. *Deroulet*, 48 P.3d at 524. This review "weighs the gravity and seriousness of a defendant's triggering and underlying felonies together against the 'harshness of the penalty.'" *People v. Foster*, 2013 COA 85, ¶ 56 (quoting *Deroulet*, 48 P.3d at 527); *see also People v. McRae*, 2016 COA 117, ¶ 22.

¶ 10      Our supreme court has designated certain crimes as per se grave and serious for proportionality purposes. *Deroulet*, 48 P.3d at

---

[1] Under the habitual criminal statute, a convicted felon who has been previously convicted of three felonies shall be adjudicated a habitual criminal and must be sentenced to four times the maximum of the presumptive range for the class of the triggering felony conviction. *See* § 18-1.3-801(2)(a), C.R.S. 2016.

524 (identifying aggravated robbery, robbery, burglary, accessory to first degree murder, and narcotics-related offenses as per se grave and serious).  Such crimes are grave or serious "by their very nature."  *People v. Gaskins*, 825 P.2d 30, 37 (Colo. 1992).  One division of this court has concluded that first degree assault is per se grave or serious, *People v. Gee*, 2015 COA 151, ¶ 60, and the supreme court and several other divisions of this court have concluded or implied that first degree assault is a serious offense, *see People v. Mershon*, 874 P.2d 1025, 1033-34 (Colo. 1994); *People v. Hayes*, 923 P.2d 221, 230 (Colo. App. 1995); *People v. Penrod*, 892 P.2d 383, 387 (Colo. App. 1994).

¶ 11    For other offenses, a court determines gravity or seriousness by considering the magnitude of the offense, whether the offense involved violence, whether the offense is a lesser included offense or an attempted offense, and the defendant's motive.  *McRae*, ¶ 22 (citing *People v. Cooper*, 205 P.3d 475, 479 (Colo. App. 2008)).  Additionally, "[t]he General Assembly's current evaluation of the seriousness of the offense at issue is a factor that can be considered in determining whether [a] defendant's sentence is grossly disproportionate."  *Id.* (quoting *People v. Gaskins*, 923 P.2d 292,

5

296 (Colo. App. 1996)); *see also People v. Hargrove*, 2013 COA 165, ¶ 20; *People v. Patnode*, 126 P.3d 249, 261 (Colo. App. 2005); *Anaya*, 894 P.2d at 32; *Penrod*, 892 P.2d at 388.[2]

¶ 12    We give a great deal of deference to legislative determinations regarding sentencing; therefore, in most cases, the abbreviated proportionality review will result in a finding that the sentence is constitutionally proportionate. *Deroulet*, 48 P.3d at 526. However, "[a] statutory scheme cannot guarantee a sentence that is constitutionally proportionate to a particular defendant convicted of a particular crime under particular circumstances." *Patnode*, 126 P.3d at 261 (quoting *Deroulet*, 48 P.3d at 526). And "[t]he provisions of the Habitual Criminal Act create a unique possibility that a defendant will receive a . . . sentence which is not proportionate to the crime for which the defendant has been convicted." *Alvarez v. People*, 797 P.2d 37, 40 (Colo. 1990).

---

[2] In *Rutter*, the supreme court granted certiorari to consider "[w]hether a court, when conducting an abbreviated proportionality review of a habitual criminal sentence can consider the [G]eneral [A]ssembly's subsequent reclassification of a crime and/or amendment of the habitual criminal statute that made an underlying crime inapplicable for purposes of a habitual criminal adjudication." *Rutter v. People*, 2015 CO 71, ¶ 1 n.1. It ultimately did not address the question, because no reclassification of the triggering offense had occurred. *Id.* at ¶ 13.

¶ 13    An extended proportionality review is required when the abbreviated review gives rise to an inference of gross disproportionality.  *McRae*, ¶ 6.  An extended review involves a comparison of the sentences imposed on other criminals who commit the same crime in the same jurisdiction and a comparison of the sentences imposed for the commission of the same crime in other jurisdictions.  *Id.*; *see also Deroulet*, 48 P.3d at 524.

## B. Discussion

¶ 14    We begin by concluding that Oldright's triggering offense, first degree assault, is a grave and serious offense because the legislature deems it a crime of violence and an extraordinary risk crime, Oldright used a deadly weapon to commit the crime, and the victim suffered serious bodily injury.  Thus, we reject Oldright's argument that the circumstances of his specific offense somehow reduce the crime's severity or gravity.  Absent the habitual criminal finding, this class 3 felony conviction carries a minimum prison sentence of ten years and a maximum sentence of thirty-two years.  *See* § 18-1.3-406(1)(a),(2)(a)(I)(c), C.R.S. 2016.

¶ 15    Oldright's habitual criminal convictions are as follows:

- Aggravated driving after revocation prohibited (a class 6 felony at the time of conviction): On December 23, 2004, police arrested Oldright for aggravated driving, driving under the influence (DUI), and careless driving.  The DUI and a class 2 traffic offense (careless driving) were dismissed.  The conviction date for aggravated driving was July 18, 2005.  *This offense was reclassified by the legislature and reduced to a misdemeanor in 2015.*  Ch. 262, sec. 4, § 42-2-206, 2015 Colo. Sess. Laws 996; *see also* § 42-2-206, C.R.S. 2016.

- Forgery (a class 5 felony): In September 1999, Oldright stole the personal checkbook of his former girlfriend and business partner and wrote five checks totaling $1337.52.  His conviction date for that crime was August 22, 2001 (and his sentence was modified April 1, 2002).

- Fraud by check (a class 6 felony at the time of conviction): On December 29, 2000, Oldright wrote two checks to a computer store that were returned for insufficient funds.  He wrote one check for $1075.50 and the second for $10.00.  The conviction date was November 9, 2001.  *This*

*offense was reclassified by the legislature and reduced to a class 1 misdemeanor in 2007.*  Ch. 384, sec. 8, § 18-5-205(3)(c), 2007 Colo. Sess. Laws 1693-94; *see also* § 18-5-205(3)(c), C.R.S. 2016.

- Theft by receiving between $500 and $15,000 (a class 4 felony at the time of conviction): On November 27, 2000, Oldright received a loaner car that he knew was stolen in exchange for bonding a friend out of jail.  The car contained stolen computer equipment.  The owner valued the car at $17,000, and the court ordered Oldright to pay $1224.00 in restitution.  Oldright was convicted on August 22, 2001. *This offense was reclassified by the legislature and reduced to a class 5 felony in 2013.*  Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2196; *see also* § 18-4-401(2)(g), C.R.S. 2016.

- Theft of between $500 and $15,000 (a class 4 felony at the time of conviction): On November 21, 2000, Oldright stole a computer from Micro Center.  The court ordered $1579.00 in restitution.  *This offense was reclassified by the*

9

*legislature and reduced to a class 1 misdemeanor in 2013.*

Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2196.

¶ 16    The trial court correctly recognized that Oldright's prior convictions "standing alone arguably [did not] rise to the level of grave and serious" offenses.  However, it erred when it further concluded that each of the prior convictions was "serious" simply because each was a felony, without further considering relevant mitigating factors, including the legislature's current classification of those prior crimes.  While Oldright is not entitled to be sentenced under any of the amended statutes, it is appropriate and necessary to consider these legislative changes in determining whether his sentence is grossly disproportionate.  *See Hargrove*, ¶ 28 ("This [the legislature's 2011 amendment to the habitual criminal statute] calls into greater question the applicability to . . . felony possession convictions of case law finding narcotics-related crimes to be per se grave and serious.  At the very least, we believe a court could factor in the amount of narcotics involved in a simple possession conviction . . . in evaluating the broader question of whether a defendant's triggering felony and underlying felonies 'in combination . . . are so lacking in gravity or seriousness so as to

10

suggest that the sentence is grossly disproportionate.'" (quoting *Deroulet*, 48 P.3d at 524-25)); *see also Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) ("The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."). There is no basis to conclude the court did that here.

¶ 17    In particular, the court's conclusion that Oldright's aggravated driving conviction was "a very grave and serious offense that puts the public at risk" is contradicted by a division of this court's previous holding that a § 42-2-206 offense is "essentially a violation of an administrative order" that could not be "understood as [a] 'grave and serious crime[]'" for proportionality purposes, absent other aggravating factors. *Patnode*, 126 P.3d at 261. The existing record reveals no information about the facts and circumstances underlying this offense. It shows only that the prosecution dismissed a DUI and careless driving charge. Without additional evidence indicating a greater degree of danger to the public arising from Oldright's actions, we cannot conclude that the record shows this offense to be "serious." And, by reclassifying this crime to a

11

misdemeanor, the General Assembly does not consider this to be a serious offense.

¶ 18    Additionally, the trial court's finding that the "General Assembly has found these [property] offenses[3] to be so serious that they would qualify for felony sentencing" ignores the General Assembly's reclassification of two of these offenses to misdemeanors, demonstrating that it no longer considers these offenses to be serious.  Moreover, the General Assembly's reduction of the third offense to a lower felony classification and correspondingly lower penalty demonstrates that it regards this offense as less serious now than it did when the offense was committed.

¶ 19    While *Rutter* could be construed to hold that it is unnecessary to scrutinize the circumstances underlying the prior convictions when the triggering offense is per se grave or serious, we respectfully disagree with the dissent's view of *Rutter*'s holding for a number of reasons.

¶ 20    First, *Rutter*'s analysis begins with well-settled law stating that an abbreviated proportionality review (as opposed to an extended

_____

[3] Forgery, fraud by check, theft, and theft by receiving.

12

review) is sufficient "when the *crimes* supporting a sentence imposed under the habitual criminal statute *include grave or serious offenses.*" *Rutter*, ¶ 18 (emphasis added). This is important because all of Rutter's prior convictions were drug-related and, as noted by the court, involved the same substance (methamphetamine) as the triggering offenses. *Id.* at ¶ 5. Therefore, unlike Oldright, *all* of Rutter's prior convictions were per se grave and serious offenses. *See Deroulet*, 48 P.3d at 524 (identifying narcotics-related offenses as per se grave and serious).

¶ 21     Next, the court explained that its reason for granting certiorari was to determine whether the subsequent legislative classification of drug crimes (and amendments to the habitual criminal statute) altered those crimes' status as grave or serious crimes. *Rutter*, ¶ 11. The court's use of the plural "crimes" creates some uncertainty about whether it was referring to the triggering offenses, the prior offenses, or all the offenses.

¶ 22     In proceeding through the analysis, the court defined the two-part abbreviated proportionality test as "scrutiny of the *offenses* in question to determine whether in combination they are so lacking in gravity or seriousness as to suggest that the sentence is

13

constitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole." *Id.* at ¶ 18 (emphasis added) (quoting *Close*, 48 P.3d at 539). It then concluded that "for those *crimes* determined to be grave or serious in Colorado, courts skip the first sub-part of the abbreviated proportionality review and move directly to the second sub-part." *Id.* at ¶ 19 (emphasis added). We interpret the court's use of the plural "offenses" and "crimes" to include both a defendant's triggering and prior offenses, consistent with the authority cited by the court.

¶ 23 In applying the two-part test to Rutter's case, the court found that Rutter's triggering offense was the crime of manufacturing methamphetamine — a per se grave or serious offense. *Id.* at ¶ 22. It then concluded that because that offense had previously been designated as grave or serious, there was no reason to alter that classification based on subsequent legislation. *Id.* The court then scrutinized "the harshness of Rutter's sentence in relation to the fact that his triggering offense [was] grave or serious," citing to *Deroulet*. *Id.* at ¶ 24. However, in *Deroulet*, the court explained that Colorado has "delineated certain crimes as 'grave or serious'" and said when a crime is "grave or serious" a reviewing court may

14

proceed directly to consider the severity of punishment. *Deroulet*, 48 P.3d at 524. It did not state that a grave or serious triggering offense, by itself, could be the basis for dispensing with the first subpart of an abbreviated proportionality review when other offenses, not deemed per se grave or serious, were implicated. Indeed, the Court did not specifically limit *Deroulet*'s holding.

¶ 24 We conclude, from *Rutter*'s reliance on prior precedent and its refusal to limit it, that when faced with a triggering or a prior offense that is per se grave or serious, a trial court need not determine the gravity or seriousness of that particular offense any further under subpart one. However, when a triggering or prior offense is not per se grave or serious, then a court must engage in subpart one of the abbreviated review analysis to determine gravity before analyzing the harshness of the sentence under subpart two. Because all of Rutter's triggering and prior offenses were per se grave or serious, there was no need for any subpart one analysis. In contrast, because none of Oldright's prior convictions is per se grave or serious, the trial court must determine the gravity of those prior offenses before it can reasonably consider the harshness of the penalty.

15

¶ 25     This conclusion is consistent with well-settled jurisprudence requiring a court to assess *all* of a defendant's offenses *together* in determining the proportionality of a sentence. *See Harmelin v. Michigan*, 501 U.S. 957, 1001-02 (1991) (abbreviated review consists of two subparts comparing gravity of offenses and harshness of penalty); *Deroulet*, 48 P.3d at 524-25 (reviewing court must scrutinize *all* of a defendant's offenses "in combination"); *Gaskins*, 825 P.2d at 36 (proportionality review requires court to scrutinize offenses *in combination* to determine gross disproportionality). Indeed, a proportionality review of a habitual criminal sentence would be meaningless were we to consider only the gravity of the triggering offense without considering the gravity of the underlying offenses requiring the habitual sentence enhancement.

¶ 26     This case illustrates the importance of the two-step abbreviated review. Oldright's first degree assault conviction is grave or serious, and the legislature has recognized this fact by requiring a mandatory prison sentence of ten to thirty-two years. The question here is whether a sixty-four year sentence, double the presumptive maximum sentence, raises an inference of gross

16

disproportionality.  The answer lies in the nature and number of Oldright's prior convictions.

¶ 27    The certified penitentiary packets and the transcript of the habitual criminal trial are the exclusive basis in the record for us to scrutinize Oldright's predicate offenses.[4]  We have thoroughly reviewed these materials and conclude that on the basis of those materials and the General Assembly's reclassification of several of the prior offenses, when considered in combination, there is an inference of gross disproportionality because: (1) three of Oldright's prior convictions are now misdemeanors (and could not now form the basis for habitual criminal sentencing); (2) those same three prior convictions were not per se grave or serious when Oldright committed them; (3) the two remaining prior convictions are not grave or serious; (4) the limited record does not support a conclusion that the circumstances of the prior convictions show that they were grave or serious; and (5) the sentence for the triggering offense today would require only a thirty-two year maximum prison sentence.  While we do not minimize Oldright's

_____

[4] The parties did not include the presentence investigation report in the record on appeal.

17

conduct in this case, we must conclude, on the basis of the record before us, that the particular facts of the triggering and prior offenses leads to an inference that Oldright's sixty-four-year sentence is grossly disproportionate to his offenses. Accordingly, we vacate Oldright's sentence and remand the case for the trial court to conduct an extended proportionality review.

III. Conclusion

¶ 28 We vacate the sentence and remand for resentencing and an extended proportionality review.

JUDGE ASHBY concurs.

JUDGE HAWTHORNE concurs in part and dissents in part.

JUDGE HAWTHORNE, concurring in part and dissenting in part.

¶ 29     I concur with the majority's conclusion that Oldright's triggering offense, first degree assault, is a grave or serious crime. And, I also reject his argument that the specific facts surrounding his triggering offense mitigate its gravity or seriousness.

¶ 30     But because, in my opinion, the majority does not apply Colorado's guiding principles for proportionality reviews in the manner prescribed by the supreme court in *Rutter v. People*, 2015 CO 71, I disagree with its conclusion that the trial court must determine the gravity of Oldright's prior offenses before it can reasonably determine the harshness of his penalty. For the same reason, I also disagree with the majority's disposition of vacating Oldright's sentence and remanding the case to the trial court to conduct an extended proportionality review. Accordingly, I would affirm the trial court's decision. I therefore respectfully dissent from the majority's disposition.

I. Facts and Procedural History

¶ 31 A jury convicted Oldright of first degree assault. Oldright hit the victim in the head with a metal rod. The victim lost consciousness twice and suffered a fractured skull, a concussion, and two deep lacerations.

¶ 32 After trial, the court adjudicated Oldright a habitual criminal, and sentenced him to sixty-four years in prison.

¶ 33 The trial court conducted an abbreviated proportionality review. It concluded that Oldright's convictions were grave or serious and his sentence was not disproportionate. So, the court denied his request for an extended proportionality review.

## II. Proportionality Review

¶ 34 Oldright contends that the court erred by not conducting an extended proportionality review. I disagree.

### A. Guiding Principles

¶ 35 Whether a sentence is constitutionally proportionate is a legal question that we review de novo. *People v. Gee*, 2015 COA 151, ¶ 56.

¶ 36 The Eighth Amendment prohibits extreme sentences that are "grossly disproportionate" to the crime. *Close v. People*, 48 P.3d

528, 536 (Colo. 2002); *People v. Mershon*, 874 P.2d 1025, 1030 (Colo. 1994).

¶ 37　"[A]n abbreviated proportionality review is sufficient when the crimes supporting a sentence imposed under the habitual criminal statute include grave or serious offenses." *Rutter*, ¶ 18. An abbreviated proportionality review involves determining whether the sentence gives rise to an inference of gross disproportionality by scrutinizing (1) the offense's gravity or seriousness in relation to (2) the sentence's harshness. *Id.* Further analysis is required only if this abbreviated review gives rise to an inference of gross disproportionality. *Close*, 48 P.3d at 542.

¶ 38　If a crime is determined to be per se grave or serious, the court does not examine the facts and circumstances underlying the offense. *People v. Hargrove*, 2013 COA 165, ¶ 12. Rather, the court proceeds directly to considering the sentence's harshness. *Rutter*, ¶ 19. "[I]t is 'highly likely that the legislatively mandated sentence' will be constitutionally proportionate for grave or serious crimes." *Id.* (quoting *Close*, 48 P.3d at 538). "Thus, the ability to proceed to the second sub-part of the abbreviated proportionality review, namely the harshness of the penalty, when a grave or serious crime

is involved results in a near-certain upholding of the sentence." *Id.* (quoting *Close*, 48 P.3d at 538). These guiding principles establish that, in abbreviated proportionality reviews, courts only scrutinize the penalty's harshness when the crime is grave or serious. *Id.* at ¶ 20. And, it is highly likely that the sentence will be proportionate. *Id.*

## B. Application

### 1. Oldright's Triggering Offense Was Grave or Serious

¶ 39 Oldright's triggering offense was first degree assault. Another division of this court has held that first degree assault is per se grave or serious, and I see no reason to disagree with that holding. *See Gee*, ¶ 60.

¶ 40 As the supreme court similarly noted in *Rutter*, I note here that, although it would not have been dispositive, the legislature did not reclassify Oldright's triggering offense of first degree assault. Thus, even in the legislature's view, the nature of first degree assault remains unchanged. So, Oldright's triggering offense was outside the purview of any legislative sentencing reforms.

### 2. Abbreviated Proportionality Review

¶ 41    Consistent with *Rutter*, I proceed to the second subpart in this abbreviated proportionality review, determining whether Oldright's sixty-four-year sentence for the grave or serious triggering offense of first degree assault is overly harsh and thus raises an inference of gross disproportionality. *Rutter*, ¶ 24. And, at this stage, the *Rutter* majority unequivocally states that the court's precedent directs the proportionality review be conducted by scrutinizing the defendant's sentence "in relation to the fact that his triggering offense is grave or serious." *Id.* Therefore, as the court mandates, I "must focus on the principal felony — the felony that triggers the [enhanced] sentence . . . ." *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 296 n.21 (1983)).

¶ 42    I disagree with the majority rejecting *Rutter*'s mandate that a reviewing court must focus on the triggering offense because, in its opinion, the *Rutter* court misread its own precedent from *Deroulet*. Despite the majority's detailed and articulate reasoning, we are "bound to follow supreme court precedent." *In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 (quoting *People v. Gladney*, 250 P.3d 762, 768 n.3 (Colo. App. 2010)).

23

¶ 43    A sixty-four-year sentence was the legislatively required sentence for Oldright's class 3 extraordinary risk crime and habitual counts. *See* §§ 18-1.3-401(1)(a)(V)(A), (10)(a), (b)(XII), 18-1.3-801(2), C.R.S. 2016. The sentence is not too harsh because the triggering offense is grave or serious. *See Rutter*, ¶ 25 (ruling the defendant's ninety-six-year sentence not too harsh in light of fact that triggering offense was grave or serious). So, the sentence is not grossly disproportionate. *Id.* (noting the "'very high likelihood that a sentence will be upheld as constitutionally proportionate' when the crime is grave or serious" (quoting *Close*, 48 P.3d at 536)).

¶ 44    Oldright argues that his sentence is disproportionate because his prior offenses are not grave or serious, and the General Assembly has reclassified three of his prior felony offenses as misdemeanors. But, because his triggering offense is grave or serious, I need not scrutinize his underlying prior convictions. *See id.* at ¶¶ 21-25 (directing that the proportionality review focus on scrutinizing the harshness of a defendant's sentence in relation to the triggering offense).

¶ 45    And even examining Oldright's prior underlying felonies does not raise an inference of gross disproportionality. He had five prior

felony convictions: aggravated driving after revocation, forgery, fraud by check, and two counts of theft. Contrary to the majority's suggestion that Oldright's aggravated driving after revocation conviction was essentially an administrative order violation, in pleading guilty to that offense, Oldright also admitted that he was driving under the influence of alcohol or drugs, or both.

¶ 46    Under *Rutter,* I need not address the legislative changes to Oldright's underlying convictions because his triggering offense was outside the purview of any sentencing reform and that is the offense on which a court must focus in conducting an abbreviated proportionality review. *See id.* at ¶¶ 23, 24. But even considering that two of Oldright's prior felonies were reclassified as misdemeanors, no inference of gross disproportionality is raised because three of his prior five felonies would still be felonies if committed today. *Cf. id.* at ¶ 13 (noting that "while the legislature can change the classification of crimes, courts determine whether offenses are grave or serious for purposes of proportionality review"). Also, a crime such as theft can be grave or serious when it is one of a variety of prior offenses. *See Mershon,* 874 P.2d at 1031.

25

¶ 47    Finally, even assuming that Oldright's underlying offenses, standing alone, are not grave or serious, I conclude that, when combined with his serious first degree assault offense, they are grave or serious.  So, no inference of gross disproportionality is raised by the court's imposing the statutorily mandated sentence. *See People v. Deroulet*, 48 P.3d 520, 527 (Colo. 2002) (concluding that court erred in reducing legislatively mandated sentence even though underlying crimes, "standing alone," were not grave or serious).

¶ 48    I conclude that Oldright's sentence was not grossly disproportionate.  And, I reject his contention that the trial court erred in failing to conduct an extended proportionality review.

### III. Conclusion

¶ 49    I would affirm the sentence.