23CA1987 Peo v Clark 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1987
El Paso County District Court No. 17CR5348
Honorable Frances Johnson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Patrick Allen Clark,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE FOX
Kuhn and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Erin Hunn, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Patrick Allen Clark, appeals the district court's order reinstating his sentence to life in prison without the possibility of parole (LWOP) for first degree kidnapping following an extended proportionality review.  We affirm.

## I.     Sentence Proportionality Reviews

¶ 2     Both the Eighth Amendment to the U.S. Constitution and article II, section 20 of the Colorado Constitution prohibit the imposition of a sentence grossly disproportionate to the severity of a defendant's crime.  *See Wells-Yates v. People*, 2019 CO 90M, ¶¶ 5, 10.

¶ 3     A sentence proportionality review is a two-step process.  *Id.* at ¶ 7.  The district court must first conduct an abbreviated proportionality review, comparing the gravity or seriousness of the offense to the harshness of the penalty to determine if the sentence gives rise to an "inference of gross disproportionality."  *Id.* at ¶ 8.  The gravity or seriousness of the offense turns on the "facts and circumstances surrounding that offense."  *Id.* at ¶ 75.  But when an offense is "grave or serious in every potential factual scenario," it is per se grave or serious, and the court may proceed directly to consider the harshness of the penalty.  *Id.* at ¶ 63.  If, at this step,

1

the sentence does not give rise to an inference of gross disproportionality, no further analysis is required, and the sentence is constitutional. *Id.* at ¶ 15.

¶ 4     But if the abbreviated proportionality review does give rise to an inference of gross disproportionality, the court must proceed to the second step of the analysis — an extended proportionality review. *Id.* During this step, the court conducts an intrajurisdictional and interjurisdictional review, comparing the defendant's sentence to "sentences for other crimes in the same jurisdiction" and to "sentences for the same crime in other jurisdictions." *Id.* at ¶¶ 7, 15-17.

## II.    Case Background

¶ 5     The relevant facts giving rise to this case were detailed in the opinion resolving Clark's direct appeal:

> The victim, Kenneth Foor, rented a bedroom in Clark's basement. Foor testified that one night, while asleep, he awoke to Clark punching him and hitting him with the handle of a hammer. Foor testified that Clark assaulted him for approximately ten minutes. Foor sustained bruising and a fractured hip, which he testified rendered him immobile and unable to stand up or leave the bedroom.

During the assault, Clark accused Foor of stealing his belongings. Clark told Foor he could not leave the house until he returned Clark's possessions. Clark placed a video camera on a table in Foor's room, telling Foor, "Don't fucking move from that couch," and "We'll know if you move." According to Foor, the camera beeped and flashed a red light when he moved, which Clark had told Foor meant the camera was sending alerts to Clark's phone. When the police found the video camera, it was unplugged. Investigators never tested the camera.

. . . .

Foor remained in the bedroom with the door closed until his parole officer arrived to pick him up on a parole violation almost twenty-four hours later. Regarding whether the bedroom door was locked during this time: Foor said he was unsure, Foor's parole officer said the door was not locked when he arrived, and another witness said the latches on the door did not align and therefore the door could not be locked.

When the parole officer arrived, Clark told the officer that Foor was not in the house and that aggressive dogs were in Foor's bedroom. Nonetheless, the officer entered the house, opened the bedroom door, found Foor, and escorted him to the police car. Foor told the officer what had occurred as he was transported.

*People v. Clark,* slip op. at ¶¶ 2-6 (Colo. App. No. 18CA2293, Aug. 26, 2021) (not published pursuant to C.A.R. 35(e)).

3

¶ 6    A jury convicted Clark of class 1 felony first degree kidnapping involving injury[1], class 5 felony false imprisonment, and misdemeanor third degree assault.  Clark received an LWOP sentence for kidnapping, plus concurrent sentences for the other two convictions.

¶ 7    On direct appeal, a division of this court affirmed Clark's convictions but concluded that an abbreviated proportionality review of Clark's LWOP sentence raised an inference of gross disproportionality.  *Id.* at ¶¶ 40-41.  In doing so, the division declined to designate first degree kidnapping a per se grave or serious offense.  *Id.* at ¶ 33 n.2.  The division vacated the kidnapping sentence and remanded to the district court for an extended proportionality review.  *Id.* at ¶ 41.  The Colorado Supreme Court denied certiorari.

---

[1] Clark was charged and convicted under section 18-3-301(1)(c), (2), C.R.S. 2025.  A person commits first degree kidnapping if they "[i]mprison[] or forcibly secret[] any person" with the intent to "force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control."  § 18-3-301(1)(c).  First degree kidnapping is a class 1 felony "if the person kidnapped . . . suffered bodily injury."  § 18-3-301(2).

4

¶ 8    On remand, the prosecution and Clark filed briefs supporting their respective positions.  For its intrajurisdictional comparison, the prosecution compared Clark's sentence to sentences for other class 1 felonies in the Fourth Judicial District, arguing that these defendants were most "similarly situated" to Clark.  The prosecution asserted that, because the court had no discretion to impose a different sentence in those cases, all of those defendants were also sentenced to LWOP.  For the interjurisdictional comparison, the prosecution argued that "[t]his is generally interpreted as other jurisdictions within the same state," although it cited no authority for this assertion.  It determined that "[a]ny sentence within the state of Colorado for a similarly situated defendant would have the exact same sentence as the conviction does not leave a discretionary range for the court to consider."

¶ 9    For Clark's intrajurisdictional comparison, he first argued that, of Colorado's six class 1 felonies, first degree kidnapping is the only crime that has resulted in an LWOP sentence in the past twenty years where the victim did not die and there was no use of force or a deadly weapon.  He also asserted that he was one of two people in the last twenty years who received an LWOP sentence for

first degree kidnapping in a case that did not also include another conviction for murder, attempted murder, sexual assault, first degree assault, or aggravated robbery. Clark further argued that first degree kidnapping does not require proof of use of a deadly weapon or *serious* bodily injury and yet mandates a harsher sentence than many other crimes that do require proof of these elements, like second degree murder, human trafficking, first degree assault, and manslaughter.

¶ 10      In his interjurisdictional comparison, Clark asserted that Colorado is one of only eight states that mandate an LWOP sentence for first degree kidnapping. He claimed that twenty states have a maximum sentence of "[forty] years or fewer," and twelve of those states have a maximum of "[twenty-five] years or fewer." He also asserted that federal courts can only impose a life sentence for kidnapping if a person dies as a result of the offense. Clark further argued that Colorado is one of only two states for which first degree kidnapping "contains a theory of liability that does not require the use of force, serious bodily injury, or even actual control."

¶ 11      After hearing oral arguments from the parties, the district court issued a written order in which it conducted an extended

proportionality review. For the intrajurisdictional comparison, the court found that "[f]or every first-degree felony conviction in the past five to twenty years in El Paso County," the defendant was sentenced to LWOP. For the interjurisdictional comparison, the court limited the analysis to first degree kidnapping convictions "outside of El Paso County, but within Colorado." It found that there were at least eight convictions and each of those defendants was sentenced to LWOP.

¶ 12     The court cited *Harmelin v. Michigan*, 501 U.S. 957, 998-99 (1991), and *People v. Deroulet*, 48 P.3d 520, 527 (Colo. 2002), *abrogated by, Wells-Yates*, 2019 CO 90M, to say that it was required "to give deference to the legislature's determination of the appropriate punishment for first-degree kidnapping." And in the framework of this deference, the court could not see "how the only legally authorized sentence for a first-degree kidnapping sentence could ever be disproportionate." Therefore, the court found that "the only legally authorized sentence" for Clark's kidnapping conviction was not grossly disproportionate to the crime and reinstated the LWOP sentence.

## III. Discussion

¶ 13    Clark contends that the district court's extended proportionality review was erroneous because the court (1) failed to consider the sentences for crimes other than class 1 felonies during its intrajurisdictional comparison; (2) failed to consider the sentences for first degree kidnapping in jurisdictions outside of Colorado during its interjurisdictional comparison; and (3) declined to exercise its discretion to impose a constitutional sentence and instead deferred to the legislative sentencing scheme. While we agree that the court engaged in a somewhat deficient extended review, we conclude that the court's ultimate determination that Clark's LWOP sentence was not grossly disproportionate was correct.

¶ 14    We review de novo whether a sentence is grossly disproportionate in violation of the U.S. and Colorado Constitutions. *Wells-Yates*, ¶ 35.

### A. Intrajurisdictional Comparison

¶ 15    Clark was convicted of first degree kidnapping under section 18-3-301(1)(c), (2), C.R.S. 2025. A person commits first degree kidnapping if they "[i]mprison[] or forcibly secret[] any person" with

8

the intent to "force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control." § 18-3-301(1)(c). They are guilty of a class 1 felony "if the person kidnapped . . . suffered bodily injury." § 18-3-301(2). Clark committed the offense between September 13, 2017, and September 14, 2017. In Colorado, all class 1 felonies committed on or after July 1, 1993, and before July 1, 2018, carry a statutorily mandated LWOP sentence. § 18-1.3-401(1)(a)(V)(A), C.R.S. 2025.

¶ 16 As we have said, in this first part of an extended proportionality review, the court must compare the defendant's sentence to "sentences for other crimes in the same jurisdiction." *Wells-Yates*, ¶ 17. "Other crimes" has not been defined by Colorado statute or case law. However, the United States Supreme Court has said that, in the context of an extended proportionality review, "[i]f more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Solem v. Helm*, 463 U.S. 277, 291 (1983).

¶ 17 Citing this language from *Solem*, Clark argues that this means the district court "should have considered the facts of [his] case to

determine which crimes are more serious [regardless of felony class] and compared the sentences for those crimes to the sentence of a class one felony." We disagree. The question is, "Do 'more serious crimes' in the same jurisdiction have the same penalty or a less serious penalty?" And "class 1 felonies are plainly the most serious of offenses." *People v. Turley*, 18 P.3d 802, 805 (Colo. App. 2000). Therefore, by definition, anything less than a class 1 felony is not a "more serious crime" than first degree kidnapping. And whether first degree kidnapping should remain a class 1 felony, in light of lower level felonies involving things like death or serious bodily injury, is not the issue before us; nor is it an issue we would be at liberty to decide.

¶ 18 Thus, the only sentences for crimes other than first degree kidnapping that can be used in this intrajurisdictional comparison are sentences for other class 1 felonies. The other five class 1 felonies in Colorado are:

1. First degree murder, § 18-3-102(3), C.R.S. 2025;

2. First degree murder of a peace officer, firefighter, or emergency medical service provider, § 18-3-107, C.R.S. 2025;

3. Child abuse where a person in a position of trust knowingly causes the death of a child under twelve years of age, § 18-6-401(7)(c), C.R.S. 2025;

4. Assault during escape where the person has been convicted of a class 1 felony, § 18-8-206(1)(a), C.R.S. 2025; and

5. Treason, § 18-11-101(2), C.R.S. 2025.

As class 1 felonies, these five offenses also require LWOP sentences. *See* § 18-1.3-401(1)(a)(V)(A).

¶ 19    The first three felonies listed all require the death of a person as an element of the crime. Arguably then, these qualify as "more serious crimes . . . subject to the same penalty," *Solem*, 463 U.S. at 291, than first degree kidnapping because first degree kidnapping only requires "bodily injury," § 18-3-301(2).

¶ 20    Assault during escape requires only an assault (1) with the intent to commit bodily injury with a deadly weapon or (2) by use of force that is "likely" to result in serious bodily injury. *See* § 18-8-206(1) ("Any person confined in any lawful place of confinement within the state who, while escaping or attempting to escape, commits an assault with intent to commit bodily injury

11

upon the person of another with a deadly weapon, or by any means of force likely to produce serious bodily injury, commits . . . [a] class 1 felony, if the person has been convicted of a class 1 felony . . . .”). One could say that this offense is less serious than first degree kidnapping because first degree kidnapping requires actual bodily injury and assault during escape does not.  Yet both require an LWOP sentence.

¶ 21    As for treason, that offense requires no injury at all.  *See* § 18-11-101(1) (“A person commits treason if he levies war against the state of Colorado or adheres to its enemies, giving them aid and comfort.”).  But it is indeed a class 1 felony subject to LWOP sentencing.

¶ 22    In the end, although we could compare each class 1 felony to determine relative seriousness, the legislature has effectively signaled that all six are equally severe by assigning them the same punishment.  Accordingly, although an intrajurisdictional comparison appears largely uninformative for class 1 felonies, it confirms that Clark’s LWOP sentence for first degree kidnapping is

not grossly disproportionate compared to the other class 1 felonies in the same jurisdiction.[2]

¶ 23    Clark argues that, even if we limit our comparison to class 1 felonies, "it is still apparent that if every sentence to [LWOP] in a twenty-year period involved murder with the exclusion of [his] case, [his] sentence was excessive." But this argument misstates the record. In his brief to the district court, Clark asserted that no one has been sentenced for treason or assault during escape in the last twenty years, and, therefore, first degree kidnapping is the only class 1 felony that has resulted in an LWOP sentence in the past twenty years where the victim did not die and there was no use of force or a deadly weapon. And he claimed that of the 786 people who have received LWOP sentences since 2003, the victim was murdered in 773 of those cases, and the remaining 13 cases were

---

[2] We acknowledge Clark's argument that class 1 felonies are unique because they have a mandatory sentence and an intrajurisdictional comparison will always yield the same result. However, the interjurisdictional comparison will still evaluate whether one of the punishments for a crime in that class is constitutionally disproportionate compared to other states. *See Solem v. Helm*, 463 U.S. 277, 299-300 (1983) (determining whether the defendant "was treated more severely than he would have been in any other State" after comparing his LWOP sentence to the sentences he would have received in the other forty-nine states).

for first degree kidnapping and included "non-murder LWOP sentences." Therefore, according to Clark's own research that he presented to the district court, in a twenty-year period he and twelve other defendants received LWOP sentences where the victim was not murdered — he was not the only one.

¶ 24 As to the twelve other first degree kidnapping cases, Clark attempted to distinguish his case from four of them by highlighting the additional convictions in those cases for things like attempted murder, aggravated robbery, and first degree assault. He argued these were more serious than his other convictions for false imprisonment and third degree assault. But, like in his case, the LWOP sentences in those cases were for first degree kidnapping, not the other convictions. And Clark cites no authority, nor have we found any, for the proposition that we must consider the other crimes for which a defendant was convicted when conducting an extended proportionality review of a sentence on a single count.

¶ 25 For these reasons, our intrajurisdictional comparison does not result in a conclusion that Clark's kidnapping sentence was grossly disproportionate. *Cf. Solem,* 463 U.S. at 303 (holding that the defendant's sentence was grossly disproportionate, in part, because

14

"[h]e has been treated more harshly than other criminals in the State who have committed more serious crimes").

## B. Interjurisdictional Comparison

¶ 26      In an interjurisdictional comparison, the court must compare the defendant's sentence to "sentences for the same crime in other jurisdictions." *Wells-Yates*, ¶ 17; *see also Helm v. Solem*, 684 F.2d 582, 586 (8th Cir. 1982) ("When a disproportionality analysis is appropriate, however, the punishment that other states authorize for similar offenses provides an objective backdrop against which to judge the sentence under attack."), *aff'd*, 463 U.S. 277 (1983).

¶ 27      We agree with Clark that the district court erred by limiting its comparison to other jurisdictions within Colorado. *See Solem*, 463 U.S. at 299-300 (concluding that, for purposes of a proportionality review, the defendant "was treated more severely than he would have been in any other State" after comparing his LWOP sentence to the sentences he would have received in the other forty-nine states); *People v. Medina*, 926 P.2d 149, 152 (Colo. App. 1996) ("In examining the habitual offender statutes from neighboring states, we find that, were the defendant to have committed these crimes in those states, she would not have been

15

subject to such a harsh penalty."); *People v. Gaskins*, 923 P.2d 292, 297 (Colo. App. 1996) (concluding that the defendant's life sentence with parole eligibility was "disproportionate to allowable sentencing for similar offenses in neighboring states"). Nonetheless, we cannot conclude that a proper interjurisdictional comparison shows Clark's kidnapping sentence to be grossly disproportionate.

¶ 28 Colorado is one of nine states that impose mandatory life sentences (or the death penalty) for their most serious kidnapping offense where the victim suffered bodily injury or serious bodily injury. The other eight states are California, Georgia, Idaho, Iowa, Louisiana, Nebraska, South Dakota, and West Virginia. *See* Cal. Penal Code § 209(a) (West 2025); Ga. Code Ann. § 16-5-40(d)(4) (West 2025); Idaho Code Ann. § 18-4504(1) (West 2025); Iowa Code Ann. §§ 710.2, 902.1(1) (West 2025); La. Stat. Ann. § 14:44 (2025); Neb. Rev. Stat. Ann. §§ 28-313, 28-105(1) (West 2025); S.D. Codified Laws §§ 22-6-1, 22-19-1, 24-15-4.1 (2025); W. Va. Code Ann. § 61-2-14a (West 2025). Our comparison of the laws of other states demonstrates that Colorado is not, as Clark argued in his brief to the district court, "an outlier" when it comes to sentencing defendants for first degree kidnapping. *Cf. Solem*, 463 U.S. at 303

16

(holding that the defendant's sentence was grossly disproportionate, in part, because "[h]e has been treated more harshly than he would have been in *any other jurisdiction*, with the possible exception of a *single* State") (emphasis added).

¶ 29    Clark argued in the district court that, of the states listed above, "only Colorado, Iowa, and West Virginia have abolished the death penalty, making Colorado one of just three states in the country that subjects defendants convicted of kidnapping to the state's most serious penalty." Plus, he asserted, West Virginia includes the potential for parole based on a jury's recommendation, and Iowa requires the defendant to seriously injure, intentionally torture, or sexually abuse the victim. We fail to see how these arguments support Clark's position. If any of the remaining states still authorize the death penalty for first degree kidnapping, e.g., Georgia, Ga. Code Ann. § 16-5-40(d)(4), then Colorado's mandatory LWOP sentence would be considered more lenient. This is contrary to Clark's stance that "Colorado has the most draconian sentencing scheme for First-Degree Kidnapping of any state in the country."

¶ 30    Clark further argued that, of the states that mandate a life sentence for first degree kidnapping, only Colorado and Louisiana

17

use "a theory of liability that does not require the use of force, serious bodily injury, or even actual control." As we have said, the comparison we must make here is of Clark's sentence to "sentences for the *same crime* in other jurisdictions." *Wells-Yates*, ¶ 17 (emphasis added). Because not all states have a crime called "first degree kidnapping," we necessarily look at each state's most serious kidnapping offense for comparison. Clark cited no authority, and we are aware of none, that requires a court to go a step further and compare the elemental requirements for the same crime in other jurisdictions during an interjurisdictional comparison.

¶ 31    Based on our extended proportionality review, we conclude that Clark's LWOP sentence for first degree kidnapping was not grossly disproportionate, and the district court did not err in so deciding. We recognize that LWOP is the most severe sentence authorized by the legislature. "Nonetheless, the Supreme Court has concluded that sentencing certain defendants who have committed felonies to LWOP does not necessarily run afoul of the Eighth Amendment." *Sellers v. People*, 2024 CO 64, ¶ 52 (citing *Harmelin*, 501 U.S. at 994-96).

18

¶ 32    In light of our conclusion, we need not address Clark's

challenge to the district court's deference to the legislative

sentencing scheme.

## IV.    Disposition

¶ 33    The order is affirmed.

JUDGE KUHN and JUDGE SULLIVAN concur.